DEPARTAMENTO de ASUNTOS del CONSUMIDOR (DACO), Plaintiff,

v.

ORIENTAL FEDERAL SAVINGS, Defendant.

Civ. No. 85–1872 HL.

United States District Court, D. Puerto Rico.

Nov. 5, 1986.

Isabel Muñoz Acosta, Fed. Litigation Div., Dept. of Justice, San Juan, P.R., for plaintiff.

Fautino R. Aponte, Humacao, P.R., for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Defendant, a federally chartered savings and loan association, removed this action from plaintiff, the Departamento de Asuntos del Consumidor ("DACO"), seeking a declaration that federal law pre-empts Commonwealth administrative action in this area. Defendant also seeks an injunction prohibiting DACO from such action. DACO had sought to regulate defendant's retail installment sales and contracts. We find that the case was improvidently removed and thus remand it to DACO. Furthermore, we find that even had defendant brought it as an original claim in federal district court, federal law does not pre-empt state regulation of retail installment sales and contracts.

The Retail Installment Sales and Financing Companies Act, 10 L.P.R.A. sect. 731 *et seq.*, was approved in 1964 in order to protect consumers from excessive finance charges, then a widespread problem. *Diario de Sesiones, Asamblea Legislativa* 1964, Vol. 18, Tomo 3, pp. 1677–8. Section 773(a)(1) empowers the Board, DACO, "to establish maximum financing charges for retail installment sales, and the procedure for computation thereof." Pursuant thereto, and upon inspection, DACO fined defendant $200 for not submitting conditional sales contracts to DACO for approval. A case number was assigned and a hearing was tentatively scheduled in the event defendant wished to protest the fine. Defendant then petitioned this Court for removal.

Defendant Oriental Federal Savings Bank ("Oriental") is a federal savings and loan association chartered by the U.S. Government and regulated by the Federal Home Loan Bank Board ("Board") primarily under 12 U.S.C. 1464, the Home Owners Loan Act (HOLA), and 12 C.F.R. 500 *et seq.* In its petition for removal Oriental asserts jurisdiction under 28 U.S.C. 1331 and 1441(b), the federal question and removal statutes,[1] alleging generally that its claim arises under federal law. Oriental claims that its internal management is exclusively regulated by the Board and that DACO's attempted regulation is thus pre-empted.

Because there is no diversity of citizenship, the propriety of removal turns on the

---

1. An action brought by and in a Commonwealth agency may be considered a "civil action brought in a state court" [sect. 1441(a) ], for removal purposes where, as here, the agency proceedings are adjudicative in nature. *See Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Board*, 454 F.2d 38 (1st Cir. 1972).

jurisdictional question of whether the case arises under a law of the United States. If it appears before final judgment that a case was not properly removed because there is no original jurisdiction, the district court must remand it to the state court from which it was removed. 28 U.S.C. 1447(c).

Defendant has asserted that its claim arises under federal law because regulation of it by DACO is pre-empted by federal law. Defendant asserts this as its only defense to plaintiff's state court action, not offering any Commonwealth law-based defenses.

■■■ The clear answer to whether pleading a federal defense confers jurisdiction appears in *Franchise Tax Board Of The State Of California v. Construction Laborers Vacation Trust For Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The "well-pleaded complaint" rule states that whether a case arises under federal law must be determined from what appears on the face of plaintiff's complaint. *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). The rule "has been correctly understood to apply ... in cases in which neither the obligation created by state law nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal pre-emption defense." *Franchise Tax Board*, 463 U.S. at 12, 103 S.Ct. at 2847–8. In other words, a case may not be removed to federal court solely on the basis of a federal defense. *Id.; Hernandez-Agosto v. Romero Barcelo*, 748 F.2d 1 (1st Cir.1984); *Padro v. International Institute Of The Americas*, 597 F.Supp. 241 (D.C.P.R.1984). Because jurisdiction must appear in plaintiff's "well-pleaded" complaint, defendant Oriental may not invoke the jurisdiction of this Court on removal. Defendant Oriental's claim does not arise under the laws of the United States, but is merely a federal defense, because plaintiff DACO's administrative action does not involve any federal law.

The decision in *Franchise Tax Board* went a step farther. The "well pleaded" complaint rule cannot be circumvented, and jurisdiction conferred, by a plaintiff anticipatorily pleading in his complaint the insufficiency of a federal defense the defendant may raise. *Id.* So even had DACO petitioned for removal on the basis that its complaint anticipated Oriental's defense by asking for a declaration that federal law does not pre-empt state regulations in this area, the Court would not have jurisdiction to resolve the issue. This was the procedural situation in *Franchise Tax Board*.

An opposite resolution of the jurisdiction question would have obtained if Oriental had brought an original claim as a plaintiff in federal court seeking declaratory and injunctive relief. In a case decided the same day as *Franchise Tax Board*, the distinction between bringing an original claim and the procedure in FRANCHISE TAX BOARD was verbalized.

*Franchise Tax Board* was an action seeking a declaration that state laws were *not* pre-empted by ERISA. Here, in contrast, companies subject to ERISA regulation seek injunctions against enforcement of state laws they claim *are* pre-empted by ERISA, as well as declarations that those laws are pre-empted.

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. See *Ex Parte Young*, 209 U.S. 123, 160–162, 28 S.Ct. 441, 454–455, 52 L.Ed. 714 (1908).

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96, n. 14, 103 S.Ct. 2890, 2899, n. 14, 77 L.Ed.2d 490 (1983).

■■■ Such a claim satisfies the "well-pleaded" complaint rule, while introduction of the pre-emption issue in a removal posture does not. The seeming arbitrariness of this purely procedural distinction is mostly alleviated in that after the case is found to have been improvidently removed and thus remanded, it may still be brought as an action in federal district court by the party initially seeking removal. This turn of events does not run afoul of the prohibi-

tion of review of remand orders appearing in 28 U.S.C. 1447 (d) because the decision "to remand has no bearing on the merits of the underlying claims." *Rath Packing Co. v. Becker,* 530 F.2d 1295, 1303 (9th Cir. 1975).

■ But even if Oriental had brought an original claim for declaratory and injunctive relief, requiring a ruling on the pre-emption issue, it would not have prevailed. It cannot be said that state regulation of maximum interest rates is pre-empted by HOLA.

The Supremacy Clause [2] mandates invalidation of any state law which acts in an area exclusively occupied by federal law or which conflicts irreconcilably with federal law. *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157–58, 98 S.Ct. 988, 994–95, 55 L.Ed.2d 179 (1978); *First Federal Savings And Loan Association Of Boston v. Greenwald,* 591 F.2d 417, 425 (1st Cir. 1979). Additionally, state laws which conflict implicitly and irreconcilably with federal law may be found where, though Congress has taken no specific action, the subject matter requires national uniformity, or the state law discriminates against out-of-state interests, or the burden on interstate commerce outweighs the state's interest in its regulation. *Silver v. Garcia,* 760 F.2d 33 (1st Cir.1985); *Aldens v. Packel,* 524 F.2d 38, 46 (3rd Cir.1975).

The Home Owners' Loan Act grants the Bank Board broad powers of regulation over federal savings and loan associations.[3] Though the Board has issued detailed regulations covering all aspects of every federal savings and loan association "from its cra-

dle to its grave," *California v. Coast Federal Savings And Loan Association,* 98 F.Supp. 311, 316 (S.D.Cal.1951), most courts have been unwilling to blanketly declare that Congress has occupied the entire field of federal savings and loan association regulation. The First Circuit has refrained from so deciding. *Greenwald, supra,* at 425; *Morse v. Mutual Federal Savings And Loan Association Of Whitman,* 536 F.Supp. 1271, 1280 (D.Mass.1982).

The pre-emption analysis, then, has focused on specific areas of conflict between federal and state regulations on a case by case basis. In *Fidelity Federal Savings And Loan Association v. De La Cuesta,* 458 U.S. 141, 167–68, 102 S.Ct. 3014, 3029–30, 73 L.Ed.2d 664 (1982), while declining in n. 14 to decide whether HOLA occupied the entire field, did decide, following a long line of cases,[4] that state restriction of due-on-sale clauses in mortgage contracts was pre-empted.[5] "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent it conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility ... or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." A regulation promulgated under the federal statute which specifically permitted but did not compel due-on-sale clauses was found to pre-empt a conflicting state limitation on the clauses. The Supreme Court added more broadly that the availability of such clauses implicates the operational character of a savings

---

**2.** U.S. Constitution, Art. 6, cl. 2.

**3.** 12 U.S.C. Sect. 1464(a) provides in part:
"In order to provide thrift institutions for the deposit or investment of funds and for the extension of credit for homes and other goods and services, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings and loan associations, ..."

**4.** *Myrick v. Cooper Homes, Inc.,* 533 F.Supp. 1041 (W.D.Ark.1982); *Coral Gables Federal Sav-*

*ings and Loan Association v. Charles and Susan Harbert,* 527 F.Supp. 284 (S.D.Fla.1981); *First Federal Savings and Loan Association v. Peterson,* 516 F.Supp. 732 (N.D.Fla.1981); *Dantus v. First Federal Savings and Loan Association of Denver,* 502 F.Supp. 658 (D.C.Colo.1980).

**5.** The Puerto Rico Supreme Court, following *De La Cuesta, supra,* has also held that due-on-sale clauses are pre-empted by federal law and regulations on the matter. *Llamas v. First Mortgage Investors,* 113 D.P.R. 865 (1983); *First Federal Savings v. Registrador,* 113 D.P.R. 857 (1983).

and loan association, an area of regulation specifically delegated to the Board in order that the purposes of HOLA—to ensure the vitality and permanence of home loan associations—be carried out.

Other cases where specific sections of, or regulations pursuant to,[6] HOLA have been determined to pre-empt directly conflicting state regulations include *Federal Home Loan Bank Board v. Empie,* 778 F.2d 1447 (10th Cir.1985) (use of the word "bank" in advertising); *Greenwald, supra* (requiring mortgagees to pay interest on certain tax escrow accounts); *Meyers v. Beverly Hills,* 499 F.2d 1145 (9th Cir.1974) (prepayment of real estate loans); *Rettig v. Arlington Heights Federal Sav. And Loan Ass'n.,* 405 F.Supp. 819 (N.D.Ill.1975) (authority of associations to sell insurance and internal obligations of directors).

The broader preemption standard stated by the Supreme Court in De La Cuesta has two aspects. The operational aspect has been stated elsewhere for the proposition that "all conduct by a savings and loan association is governed by federal law ... federal law governs the *internal management* of a federal savings and loan association." *Gulf Federal Savings And Loan Association Of Jefferson Parish v. Federal Home Loan Bank Board,* 651 F.2d 259, 266 (5th Cir.1981). *See also, City Federal Savings And Loan Association v. Crowley,* 393 F.Supp. 644 (E.D.Wis.1975). The second part of the test is whether the state law in question promotes the purpose of HOLA. HOLA was enacted during the Great Depression at a time when many thrift institutions had taken heavy losses as a result of overextended lending on large buildings. The purpose of HOLA was to establish a uniform system of financially sound savings and loan institutions to ensure financing of private homes. In that regard, the Board has the power to determine what constitutes an unsafe lending practice for a savings and loan and make

regulations to avoid it. De La Cuesta, 458 U.S. at 160–166, 102 S.Ct. at 3026–29.

In this case, the local law granting DACO the power to set maximum interest rates for retail installment contracts neither conflicts with nor frustrates the purpose of HOLA.

Oriental has not pointed to any specific section of HOLA or Board regulation which directly conflicts with the Commonwealth regulation. The party claiming preemption "has the affirmative burden to show inconsistency, or at least a possibility of conflict." *Morse, supra.* In fact, there exists no section in HOLA dealing with excessive finance charges, or usury. *Cooper v. Baldwin-Bellmore Fed. Sav. & Loan Assn.,* 390 F.Supp. 874, 876 (D.C.N.Y. 1975). Oriental merely makes the "occupy the field" argument which we found *supra* not to be controlling in this area. Furthermore, recent legislative history indicates that Congress did not intend to pre-empt the application of state usury laws to retail installment sales contracts.

It is true that the Depository Institutions Deregulation and Monetary Control Act of 1980 provided for federal overrides of state usury ceilings on business, agriculture, and mortgage loans. Until then state usury laws were fully applicable to federal savings and loan associations. The pre-emption of state usury laws in these areas was found to be necessary for the continued stability and viability of the nation's financial system in an era of rising interest rates. Where state usury laws required interest rates below the market rate, severe credit crunches had developed, restricting mortgage loan availability and lowering rates of interest on savings deposits. Sweeping away antiquated, differing interest rate ceilings deemed usurious by the states helped alleviate the credit crunch, which in turn contributed to the implementation of policy dedicated to expansion in mortgage, agriculture, and business markets. Despite these important

---

6. State law may be preempted by administrative regulation pursuant to statute, as well as by the statute itself. *Bethlehem Steel Co. v. New York* *State Labor Relations Board,* 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947).

federal banking concerns, states could circumvent the federal override if they passed new usury laws, based on the federal discount rate. 1980 *U.S.Code Cong. and Admin.News* 236, 254–5, 308–9.

At the same time, in the same legislation, Congress significantly enhanced the investment authority of federal savings and loan associations. Here it was that associations were given authority to make the kind of consumer loan at issue in this case. Depository Institutions Deregulation and Monetary Control Act, Pub.L. 96–221, 94 Stat. 132, 153 (1980). Nowhere in the Act, or in subsequent legislation, appears any restriction on state usury laws in the consumer loan area. If Congress had meant to preempt traditional state regulation of usury in consumer loans it would have done so either in the section authorizing the loans or in the contemporaneously enacted section restricting state usury laws in business, agriculture, and mortgage loans. That Congress refrained from so doing proves that it had no express intention of pre-empting state law in this area.

· As for broad implicit pre-emption, neither the operational character nor the internal management is implicated by state usury regimes in the retail sales area. And state limitation of retail sales interest rates does not threaten the continued vitality of the national banking system or impede the Board in ensuring it. Consumer and other types of loans listed in 12 U.S.C. 1464(c)(2) are limited to 30 per centum of assets of a given association, thus limiting their capability of effecting the downfall of the national home loan banking system. Retail sales loans are not an area which goes to the heart, to the internal operations or the policy of savings and loan associations. Furthermore, there is no indication that a retail credit crunch has ever existed or that the maximum allowable rates in the various states are chronically below the market rate such that national uniformity is needed in this area.

WHEREFORE, this case having been improvidently removed to federal court, it is hereby REMANDED to DACO.

IT IS SO ORDERED.