DIME SAVINGS BANK OF NEW YORK, FSB, Appellant, v STATE OF NEW YORK, Respondent.

Second Department, January 15, 1992

APPEARANCES OF COUNSEL

*Paterson, Belknap, Webb & Tyler (Gregory L. Diskant* and *Lisa Cohen* of counsel), for appellant.

*Robert Abrams, Attorney-General (Elizabeth Bradford* of counsel), for respondent.

## OPINION OF THE COURT

RITTER, J.

At issue in this case is the effect of a regulation promulgated by the Federal Home Loan Bank Board (now the Office of Thrift Supervision), permitting Federal savings and loan associations to pass through to their borrowers the necessary costs incurred in connection with making loans secured by mortgages on real property (12 CFR 545.32 [b] [5]). We conclude that New York Tax Law § 253 (1-a) (a) conflicts with the regulation in issue by imposing a recording tax on mortgages securing loans for certain properties while prohibiting the lender from passing on this cost to the borrower. Accordingly, we hold that Tax Law § 253 (1-a) (a), insofar as it imposes a mortgage recording tax which may not be passed on to the borrower, is preempted by Federal regulation and is unenforceable as against Federal savings and loan associations.

The Federal Home Loan Bank Board (hereinafter the Board), an independent Federal regulatory agency formed by Congress in 1932, was vested with plenary authority to administer the Home Owners' Loan Act (12 USC § 1461 *et seq.;* hereinafter HOLA) *(see, Fidelity Fed. Sav. & Loan Assn. v De la Cuesta,* 458 US 141, 144). HOLA was enacted in response to the Great Depression of the 1930's; its purpose was to provide emergency relief with respect to home mortgage indebtedness at a time when the rate of defaults had become so high that local banking institutions, in the business of providing funds to finance the purchase of homes, had either ceased doing business or had discontinued long-term loans. Congress provided for the creation of a system of Federal savings and loan associations which were to be regulated by the Board in order to ensure their viability and provide a reliable source for the financing of home mortgages *(see, Fidelity Fed. Sav. & Loan Assn. v De la Cuesta, supra,* at 159-160).

HOLA § 5 (a) empowered the Board "under such regulations as the Director might prescribe—(1) to provide for the organization * * * *operation,* and regulation" of Federally chartered

savings and loan associations and banks, "giving primary consideration of the best practices of thrift institutions in the United States" (12 USC § 1464 [a] [1] [emphasis added]). Pursuant to this express delegation of authority, the Board has promulgated comprehensive regulations governing "the powers and operations of every Federal savings and loan association from its cradle to its corporate grave" *(People v Coast Fed. Sav. & Loan Assn.,* 98 F Supp 311, 316), making it absolutely clear that the regulatory scheme was intended to preempt "any state law purporting to address the subject of the operations of a Federal savings association" (12 CFR 545.2).

Under New York's Tax Law § 253 (1-a) (a), all lenders, including Federally regulated savings and loan associations, must pay an additional tax of 25 cents per $100 of principal value in order to record mortgages securing certain types of properties. In addition, the law contains an "anti-pass-through" provision mandating that the lender bear the full cost of recording the mortgage in certain circumstances. The plaintiff, a Federally chartered savings and loan association, contends that the "anti-pass-through" provision of the State law has been preempted by the Board's regulation expressly permitting Federal lending institutions to require the borrower "to pay necessary initial charges connected with making a loan, including the actual costs of title examination, appraisal, credit report, survey, drawing of papers, loan closing, and other necessary incidental services and costs" (12 CFR 545.32 [b] [5]).

The State does not challenge the Board's authority to preempt the anti-pass-through provision of Tax Law § 253, conceding that such an action is within the scope of authority delegated by Congress to the Board. The dispute in this case simply involves an interpretation of whether the Board intended to include a cost such as the mortgage recording tax within the embrace of its regulation. The State contends that the Board's intent to include such a cost cannot be inferred from the express language of the regulation. Instead, the State claims that the language of the regulation should be narrowly construed to include only the kinds of costs enumerated in the regulation which, it contends, involve services rendered by private parties in connection with the loan application and processing. Since the mortgage recording tax is not payment for a service rendered by a private party, the State contends it is not a loan charge as defined in the regulation.

We find no reason to give the language in the regulation such a restrictive interpretation. Indeed, to do so would ignore the clause in the regulation that permits charging the borrower for "other necessary incidental services and costs" (12 CFR 545.32 [b] [5]). No express or implied distinction is made between costs paid to a governmental agency instead of a private party—a cost remains a cost. Indeed, in its brief, the State acknowledges the "obvious fact that payment of the tax 'is an essential component of a loan secured by an interest in real property,' since without it the mortgage will not be recorded". The cost of recording a mortgage, including recording fees and the mortgage tax, is routinely passed on to the borrower.* Although the State has the power to levy a mortgage recording tax, it cannot, under the guise of this authority, or in the exercise of its police powers, interfere with the lending practices of Federally chartered savings and loan associations, or prevent such lenders from recouping the costs of making loans by passing through the cost of the tax to their borrowers *(see, Matter of Morgan Guar. Trust Co. v Tax Appeals Tribunal of N. Y. State Dept. of Taxation & Fin.,* 166 AD2d 96).

Accordingly, the plaintiff is entitled to a judgment (1) declaring that the anti-pass-through provision of Tax Law § 253 (1-a) (a) is preempted by Federal regulation and is unenforceable against the plaintiff, and (2) enjoining enforcement of the anti-pass-through provision against the plaintiff, and the matter is remitted to the Supreme Court, Nassau County, for determination of the remaining demands for relief in the plaintiff's complaint and entry of an appropriate judgment in accordance herewith.

---

* The Secretary of the United States Department of Housing and Urban Development (hereinafter HUD), in consultation with the Board and other Federal agencies, has developed and prescribed a standard form to be used by the lender in providing a good-faith estimate of all settlement costs to be paid by the borrower and the seller upon closing of a loan (HUD-1 Rev 5/76, reproduced at 24 CFR part 3500, Appendix A; *see,* 12 USC § 2603). The form provides for separate itemization of the numerous costs payable in connection with making the loan including those specified in 12 CFR 545.32 (b) (5) as well as government fees for recording mortgages (HUD-1, Rev 5/76, line 1201). An informational booklet prepared by the Secretary of HUD indicates that such fees may be paid by either the borrower or seller depending upon the real estate contract or the loan commitment; however, "[t]he borrower usually pays the fees for legally recording the new deed and mortgage" (52 Fed Reg 13566-01). The form makes no provision for the possibility that the lender will be responsible for payment of the mortgage recording tax.

EIBER, J. (dissenting). I disagree with my colleagues' conclusion that the anti-pass-through provision of New York State Tax Law § 253 (1-a) is preempted by regulations promulgated by Federal Home Loan Bank Board (now the Office of Thrift Supervision), and accordingly vote to affirm.

In 1978, the New York State Legislature amended Tax Law § 253 (1-a) to impose an additional mortgage recording tax of 25 cents per $100 of principal debt. Revenues raised by the new tax were earmarked for funding of the New York State Mortgage Guarantee Corporation, which was created for the purpose of insuring mortgages in economically depressed areas which had previously been "red lined" by State lending institutions (see, mem to Counsel to Governor from Div of Budget, dated Feb. 15, 1978). Unlike the preexisting mortgage tax of 50 cents per $100 of principal debt, the Legislature required the new recording tax to be paid by the mortgagee lending institution, expressly providing that the tax "shall not be paid or payable, directly or indirectly, by the mortgagor". The additional mortgage tax must thus "be paid by the lender and cannot be passed on to the seller, real estate broker or other third person" (see, Matter of State of New York v Intercounty Mortgagee Corp., 87 AD2d 748, 749).

At issue on appeal is whether the anti-pass-through provision of the mortgage recording tax is preempted by a regulation of the Federal Home Loan Bank Board (hereinafter Board), which permits Federal savings and loan institutions, in connection with real estate loans, to require a borrower to pay "necessary initial charges connected with making a loan, including the actual costs of title examination, appraisal, credit report, survey, drawing of papers, loan closing, and other necessary incidental services and costs" (12 CFR 545.32 [b] [5] [emphasis added]). The regulation permits Federal savings and loan institutions to collect such charges from the borrower and "pay the persons rendering services" (12 CFR 545.32 [b] [5]).

Whether the Board had the authority to promulgate a regulation which preempts this State's mortgage recording tax is less than clear. In Fidelity Fed. Sav. & Loan Assn. v De la Cuesta (458 US 141), the Supreme Court was presented with the question of whether a regulation permitting Federal savings and loan associations to use "due-on-sale" clauses in their mortgage contracts displaced restrictions imposed by the Supreme Court of California on the exercise of these clauses. Applying traditional preemption analysis, the Supreme Court

concluded that State restriction of "due-on-sale" clauses in mortgage contracts was preempted, pointing out that "[e]ven where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility' * * * or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' " (Fidelity Fed. Sav. & Loan Assn. v De la Cuesta, 458 US 141, 153, supra, quoting from Florida Avocado Growers v Paul, 373 US 132, 142-143, and Hines v Davidowitz, 312 US 52, 67).

Although the De la Cuesta court declined to decide the question of whether the Board occupied the entire field of Federal savings and loan regulation, Justice O'Connor concurred in a separate opinion "to emphasize that the authority of the Federal Home Loan Bank Board to pre-empt state laws is not limitless" (Fidelity Fed. Sav. & Loan Assn. v De la Cuesta, supra, at 171). Justice O'Connor added that "[n]othing in the language of § 5(a) of HOLA, which empowers the Board to 'provide for the organization, incorporation, examination, operation, and regulation' of federally chartered savings and loans, remotely suggests that Congress intended to permit the Board to displace local laws, such as tax statutes * * * not directly related to savings and loan practices" (Fidelity Fed. Sav. & Loan Assn. v De la Cuesta, supra, at 172 [emphasis supplied]).

As previously noted, New York State's mortgage recording tax was designed as a funding mechanism for the New York State Mortgage Guarantee Corporation, which insures home mortgage loans made in depressed areas. The mortgage tax was thus designed to help ensure that residents of these areas have an opportunity to obtain mortgages, and does not impinge upon either the operational character or the internal management of Federal savings and loan associations (see, Departamento de Asuntos del Consumidor v Oriental Fed. Sav., 648 F Supp 1194). Moreover, while the State Legislature has determined that the lending institutions which are protected by the mortgage insurance fund must bear the burden of its funding, in most cases the lending institutions which are required to pay the mortgage recording tax imposed by Tax Law § 253 (1-a) are allowed to credit such payments against either their corporate, franchise, unincorporated business income, bank or insurance taxes. The tax therefore has a

neutral effect on such lending institutions. Under these circumstances, it appears that the mortgage recording tax is not "directly related to savings and loan practices". Accordingly, Justice O'Connor's reasoning strongly suggests that the Board was without authority to preempt this State's mortgage recording tax statute.

Even assuming, however, that the Board had authority to issue a regulation displacing New York's mortgage tax statute, I disagree with the majority's conclusion that the regulation at issue, which permits Federal savings and loan institutions to pass along "initial loan charges" to customers, is in conflict with Tax Law § 253 (1-a). While the Federal Home Owners' Loan Act granted the Board broad powers of regulation over Federal savings and loan associations, most courts have been unwilling to declare that Congress has occupied the entire field of Federal savings and loan regulation *(First Fed. Sav. & Loan Assn. v Greenwald,* 591 F2d 417; *Departamento de Asuntos del Consumidor v Oriental Fed. Sav.,* 648 F Supp 1194, *supra; Morse v Mutual Fed. Sav. & Loan Assn.,* 536 F Supp 1271). Preemption analysis has therefore focused on specific areas of conflict between Federal and State regulations on a case-by-case basis *(Departamento de Asuntos del Consumidor v Oriental Fed. Sav., supra,* at 1197). Thus, the narrower question presented at bar is whether New York's mortgage recording tax conflicts with 12 CFR 545.32 (b) (5) because it falls within the classification of an "initial loan charge", which the Bank Board's regulation permits Federal savings and loan associations to pass on to their customers.

Contrary to the appellant's contention, the mortgage recording tax is not an "initial loan charge" within the meaning of 12 CFR 545.32 (b) (5). The specific items enumerated in that regulation, such as title examinations and credit reports, refer to services rendered to the bank in connection with making a loan. In contrast, Tax Law § 253 (1-a), imposes a tax upon lending institutions for the privilege of recording a mortgage *(see, Matter of Citibank v State Tax Commn.,* 98 AD2d 929). While it is clear that the Bank Board intended to permit Federal associations to charge their customers for services rendered by private parties in connection with the loan application and loan closing process, a mortgage recording tax is paid to the State for the exercise of a privilege, and not to a third person in exchange for a service rendered. Thus, as the respondent points out, "there is no support for the proposition that the Board further intended to strip state legislatures of

their traditional power to determine who will pay the taxes they impose".

Moreover, the application of settled principles of statutory construction further militate against the overly broad interpretation of 12 CFR 545.32 (b) (5) urged by the appellant. The *ejusdem generis* rule of statutory construction requires the court to limit the general language of a statute (or, in this case, a regulation) by specific phrases which have preceded the general language *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 239; *Barsh v Town of Union,* 126 AD2d 311). Since taxes are not among the class or kind of items specified in 12 CFR 545.32 (b) (5), the application of the *ejusdem generis* rule leads to the conclusion that they are not "other necessary incidental services and costs". Accordingly, I conclude that there is no actual conflict between Tax Law § 253 (1-a) and 12 CFR 545.32 (b) (5), and that the Federal regulation does not preempt the anti-pass-through provision of the mortgage recording tax.

BALLETTA and MILLER, JJ., concur with RITTER, J.; EIBER, J., and KUNZEMAN, J. P., dissent in a separate opinion by EIBER, J.

Ordered that the order is reversed, on the law, without costs or disbursements, the motion is denied, the cross motion is granted to the extent that it is declared that Tax Law § 253 (1-a) (a), insofar as it prohibits the plaintiff from passing on a mortgage recording tax to the mortgagor, is unenforceable as against the plaintiff, and New York State is enjoined from enforcing against the plaintiff so much of Tax Law § 253 (1-a) (a) as prohibits the plaintiff from passing on a mortgage recording tax to the mortgagor, and the matter is remitted to the Supreme Court, Nassau County, for determination of the remaining demands for relief in the plaintiff's complaint, and the entry of an appropriate judgment.