740 A.2d 1081

SUZANNE TURNER, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS–APPELLANTS AND CROSS–RESPONDENTS, v. FIRST UNION NATIONAL BANK (FORMERLY FIRST FIDELITY BANK, NA NJ, A NATIONAL BANKING ASSOCIATION), DEFENDANT–RESPONDENT.

DANIEL IVERSEN AND LAWRENCE COHEN AND TERRI COHEN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS–APPELLANTS AND CROSS–RESPONDENTS, v. COLLECTIVE BANK, A FEDERALLY CHARTERED SAVINGS BANK ORGANIZED UNDER THE LAWS OF THE UNITED STATES OF AMERICA (IMPROPERLY NAMED AS COLLECTIVE BANCORP., INC., A DELAWARE CORPORATION), DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

THOMAS KELLY, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS–APPELLANTS AND CROSS–RESPONDENTS, v. CHASE MANHATTAN MORTGAGE CORPORATION, A DELAWARE CORPORATION, A/K/A CHASE HOME MORTGAGE CORPORATION, DEFENDANT–RESPONDENT.

Argued September 27, 1999—Decided December 9, 1999.

*John M. Donnelly* and *Arthur M. Brown* argued the cause for appellants and cross-respondents (*Levine, Staller, Sklar, Chan, Brodsky & Donnelly,* and *Schiffrin, Craig & Barroway, LTD.,* attorneys); (*Mr. Brown, Marc A. Topaz* and *Mr. Donnelly,* on the briefs).

*Gregory R. Haworth* argued the cause for respondent First Union National Bank (*Duane, Morris & Heckscher,* attorneys).

*George E. McDavid* argued the cause for respondent Chase Manhattan Mortgage Corporation, (*Reed Smith Shaw & McClay,* attorneys; *Mr. McDavid, Leonard A. Bernstein* and *Robert M. Jaworski,* of counsel; *Kathleen F. Doran,* on the briefs).

*Gerald A. Liloia* argued the cause for respondent and cross-appellant, Collective Bank, (*Riker, Danzig, Scherer, Hyland & Perretti* and *McCarter & English,* attorneys); *Mr. Liloia* and *Glenn P. Callahan,* on the brief.

*Dennis R. Casale* argued the cause for *amici curiae* New Jersey Bankers Association and New Jersey League of Community and Savings Bankers (*Jamieson Moore Peskin & Spicer,* attorneys; *Dominick A. Mazzagetti,* on the letter brief).

*E. Robert Levy* submitted a brief on behalf of *amici curiae* Mortgage Bankers Association of New Jersey and League of Mortgage Lenders (*Goldman, Levy, Zolotorofe & Corcoran,* attorneys; *Mr. Levy* and *Wayne A. Watkinson,* of counsel and on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal involves the interpretation of *N.J.S.A.* 46:10A–6(d) ("Section (d)"), as amended by *L.* 1993, *c.* 33. *N.J.S.A.* 46:10A–6 guarantees borrowers the right to independent legal representa-

tion in mortgage transactions. Although Section (d) prohibits lenders from shifting their legal fees to borrowers, it contains an exception allowing lenders to obtain reimbursement for legal fees incurred for the review of loan documents. We must determine the scope of the Section (d) exception. Moreover, because one of the respondent banks is a federally-chartered savings and loan association organized under the laws of the United States, we also must determine whether federal banking regulations preempt Section (d).

## I.

This appeal results from the Appellate Division's consolidation of three separate Superior Court actions. The facts in the consolidated matters have been stipulated. Petitioners, residential mortgage borrowers, secured loans from respondents, lenders authorized and licensed under the laws of the State of New Jersey or the United States to engage in the business of making mortgage loans. As a condition to obtaining the loans, the lenders required petitioners to reimburse them for their attorneys' fees incurred to review title and other loan documents submitted by petitioners. Those fees ranged from $100 to $170. In one of the underlying actions, *Turner v. First Union Nat'l Bank* (*"Turner"*), the petitioner was unrepresented. In *Iversen v. Collective Bank* (*"Iverson"*) and *Kelly v. Chase Manhattan Mortgage Corp.* (*"Kelly"*), however, petitioners were represented by counsel. The petitioner sued his or her respective lender claiming the lender's fee shifting violated Section (d).

In *Turner*, the trial court held that the bank could not charge a review fee to an unrepresented borrower. According to the *Turner* court, Section (d) is " 'clear and unambiguous ... that a lender may only require a fee when the loan documents are prepared or submitted at the direction of the borrower's attorney, but not when they are submitted by the borrower herself [or himself].' " *Turner v. First Union Nat'l Bank*, 314 *N.J.Super.* 33,

39, 713 *A*.2d 1068 (App.Div.1998) (quoting decision of the Law Division).

In the *Iversen* and *Kelly* matters, tried before the same judge in the Law Division, the trial court held that the lenders could not charge a review fee unless the borrowers' attorneys prepared or submitted documents, using their legal skills and judgment, that created "extra work" for the lenders' attorneys. *Ibid.* "Where, however, the borrower's attorney merely undertakes the 'ministerial act' of gathering title work and submits it to the lender ... [,]" the trial court held that the lender could not charge the borrower for any attorney's fees associated with the review of such documents. *Ibid.* The court further held that federal banking regulations did not preempt Section (d) with respect to Collective Bank, the federally-chartered savings and loan association. *Id.* at 39–40, 713 *A*.2d 1068. Accordingly, petitioners' motions for summary judgment were granted in each case.

The Appellate Division reversed all three decisions with respect to their interpretations of Section (d). The Panel held that Section (d) permits lenders to pass along their attorneys' fees associated with the review of "loan documents" regardless of whether the "loan documents" are submitted by, or at the direction of, the borrower's attorney or the borrower, and regardless of whether "extra work" is involved. *Id.* at 41, 49, 713 *A*.2d 1068. However, the Appellate Division affirmed the holding of the *Iverson/Kelly* court that Section (d) is not preempted by federal banking regulations. *Id.* at 53–54, 713 *A*.2d 1068. We granted petitioners' motion for leave to appeal, 157 *N.J.* 538, 724 *A*.2d 799 (1998), and Collective Bank's cross-appeal, 157 *N.J.* 644, 725 *A*.2d 1125 (1999).

## II.

*N.J.S.A.* 46:10A–6 was enacted in 1975 as a consumer protection statute entitled: "An Act with respect to the rights of a borrower to select his own attorney in certain mortgage loan transactions[.]" *L.* 1975, *c.* 145. The Legislature's intention was to end the "closed

shop" practice, a dominant practice in lending in the 1970's, under which lenders required borrowers to use and pay for the services of the lenders' attorneys. *Supplement to Opinion 608, reprinted in,* 123 *N.J.L.J.* 1368, 1369 (June 1, 1989). *N.J.S.A.* 46:10A–6 barred lenders from requiring borrowers to use an attorney chosen by the lenders, and guaranteed borrowers the right to be represented by attorneys of their own choosing. However, the statute explicitly allowed a lender to obtain reimbursement for attorney review costs when the documents to be reviewed were prepared by borrower's counsel.

In 1978 the Legislature amended *N.J.S.A.* 46:10A–6. As originally proposed, Assembly Bill A–104 would have prohibited lenders from "requiring borrowers to pay a fee ... for the bank's attorney to review papers prepared by the borrower's attorney." *Turner, supra,* 314 *N.J.Super.* at 44, 713 *A.2d* 1068 (quoting Assembly Bill A–104). Assembly Bill A–104, however, was not adopted. *Ibid.* Instead, the Legislature adopted a bill that primarily extended *N.J.S.A.* 46:10A–6 to commercial mortgage loans, but did not alter the provision of the statute allowing lenders to charge residential borrowers a review fee for documents prepared by the borrower's attorney. *Id.* at 45, 713 *A.2d* 1068 (citing *L.* 1978, *c.* 65, ¶ 2).

The 1978 amendment had little effect on residential loan practices, "[a]ttorneys [continued to] interpret[ ] the law to allow the pass-along of fees as long as they were 'reasonable.'" Henry Gottlieb, *Uproar Over Mortgage Fees Ruling,* 124 *N.J.L.J.* 1, 18 (July 6, 1989). However, in 1987, an attorney representing a lending institution in a mortgage loan transaction asked the Advisory Committee on Professional Ethics ("ACPE") whether the practice whereby a lender's attorney would charge a fee to the lender who, in turn, would bill the borrower, would violate the Rules of Professional Conduct. *Opinion 608, reprinted in,* 120 *N.J.L.J.* 1112 (December 10, 1987). Even though the lender planned to disclose to the borrower that the attorney represented the lender, and that the borrower should secure his own attorney

as permitted by *N.J.S.A.* 46:10A–6, the ACPE determined that the proposed fee shifting practice would violate the Rules of Professional Conduct. *Ibid.* The ACPE reasoned that the practice was a "scheme to avoid the provisions of *N.J.S.A.* 46:10A–6 . . ." *Ibid.*

Following a barrage of inquiries regarding *Opinion 608,* the ACPE issued the *Supplement to Opinion 608, supra,* 123 *N.J.L.J.* 1368, in June 1989. Although the Committee adhered to its original conclusion, it noted:

> The comments and questions [received by the Committee] make it abundantly clear that lending institutions and counsel who represent them regard the amended 'Closed Shop Statute' as disruptive of their established lending procedures in *commercial transactions.* The position of our committee is that any dissatisfaction with the statute will have to be resolved by resort to the Legislature and any questions regarding its interpretation by resort to our Supreme Court.

> [*Supplement to Opinion 608, supra,* 123 *N.J.L.J.* at 1369 (emphasis added).]

In 1993, in response to *Opinion 608,* the Legislature enacted the "Attorney Disclosure and Fee Limitation" Act, amending *N.J.S.A.* 46:10A–6. *See L.* 1993, *c.* 33. We then issued a ruling stating that the amended statute superseded *Opinion 608* and its supplement. *In re Opinion 608 of the ACPE,* 133 *N.J.* 415, 627 *A.*2d 1127 (1993). However, no case, until now, has interpreted the meaning of the 1993 Amendment.

## III.

The amended version of *N.J.S.A.* 46:10A–6(d) provides, in relevant part:

> d. If a loan is made to a person . . . primarily for personal, family or household purposes and is secured by real property located in this State: (1) on which the principal structure is a one-to-four family residence, . . . *the lender shall not require the borrower to reimburse the lender for, or to pay all or any portion of, any fee or expense charged by the lender's attorney except to the extent of a fee for the review of the loan documents prepared or submitted by or at the direction of the borrower's attorney or such other work or services as requested by borrower or borrower's attorney.* Any other legal fee or expense of the lender's attorney shall be the sole responsibility of the lender.

> *For the purposes of the subsection, "loan document" means a promissory note, loan agreement, mortgage, affidavit of title, power of attorney, survey and survey affidavit, title documents and searches and commitments for title insurance* and modification of any promissory note, mortgage or loan agreement.

[*N.J.S.A.* 46:10A–6(d), as amended by *L.* 1993, *c.* 33 (emphasis added).]

The committee statement accompanying the 1993 amendment states:

> The bill provides that banks and other lenders may not charge borrowers of loans secured by one-to-four family structures any fees or expenses charged by a lender's attorney except to the extent of a fee charged for the review of the loan documents prepared or submitted by or at the direction of the borrower's attorney or other legal work or services as requested by the borrower or borrower's attorney.
>
> [*Assembly Financial Institutions Committee Statement, Assembly Nos.* 1194 and 281–*L.* 1993, *c.* 33.]

The two main questions this Court must resolve with respect to Section (d) are: (1) whether lenders can require both represented and unrepresented borrowers to pay the lenders' attorney review fees; and (2) under what circumstances may lenders shift attorney review fees to borrowers.

In construing a statute, a court first should consider its plain language. *Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992). When the provisions of a statute are clear and unambiguous, they should be given their literal significance, unless it is clear from the text and purpose of the statute that such meaning was not intended. *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). However, where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control. *Watt v. Mayor & Council of Borough of Franklin,* 21 *N.J.* 274, 278, 121 *A.*2d 499 (1956). The court's ultimate goal in construing a statute is to ensure that the Legislature's plan is effectuated. *State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966); *State v. Campobasso,* 125 *N.J.Super.* 103, 108, 308 *A.*2d 674 (Law Div.1973).

Following the main clause of Section (d), a blanket statement prohibiting lenders from requiring borrowers to reimburse lenders for all or any portion of their attorneys' fees, is a clause that provides two limited exceptions allowing lenders to charge a fee for: (1) "the review of loan documents prepared or submitted by or at the direction of borrower's attorneys" or (2) for "such

other work or services as requested by the borrower or the borrower's attorney." *N.J.S.A.* 46:10A–6(d). Because those are exceptions to a consumer protection law, they should be construed narrowly. *See In re the Petition of Singer Asset Finance Co.,* 314 *N.J.Super.* 116, 118–23, 714 *A.*2d 322 (App.Div.1998). Read literally, the exceptions would be limited to instances where the loan documents are prepared or submitted only by a borrower's attorney, or where other services are requested either by the borrower or the borrower's attorney. That interpretation contradicts the statutory purpose of *N.J.S.A.* 46:10A–6 and the public policy of the State.

The terms and structure of the 1993 amendment to *N.J.S.A.* 46:10A–6 reveal three overriding legislative purposes: (1) to give mortgage borrowers the right to be represented by their own attorney (*see N.J.S.A.* 46:10A–6(a)); (2) to require lenders to disclose that their interests are inconsistent with that of the borrowers and that the lenders' attorneys represents only the lenders (*see N.J.S.A.* 46:10A–6(b)); and (3) to limit lenders' ability to shift their legal fees to borrowers, except in defined circumstances, and to require greater disclosure of the basis for those attorneys' fees (*N.J.S.A.* 46:10A–6(c) and (d)). *See* Cornelius R. O'Brien, *Protecting Mortgage Borrowers From Coerced Representation By A Lender's Attorney: New Jersey's Attempt May Fall Short Once;* 6 *Loy. Consumer L. Rep.* 77, 80 (1994).

■ *N.J.S.A.* 46:10A–6, therefore, encourages borrowers to obtain legal representation when negotiating and obtaining mortgages. However, under plaintiffs' interpretation of the exceptions to Section (d), represented borrowers would pay two sets of attorneys' fees while unrepresented borrowers would pay nothing. That interpretation clearly would discourage borrowers from obtaining representation, a result inconsistent with the intent of the statute. Moreover, plaintiffs' interpretation contradicts this Court's admonition that "both parties [to a real estate transaction] should retain counsel for their own protection and that the savings in lawyers fees are not worth the risks involved in proceeding

without counsel." *In re Opinion No. 26 of the Comm. on the Unauthorized Practice of Law,* 139 *N.J.* 323, 325, 654 *A.*2d 1344 (1995). The purchase of a family home is "almost always the most important transaction [a person] will ever undertake." *Id.* at 328, 654 *A.*2d 1344. Thus, we find that the exception in Section (d) relating to the review of loan documents, applies to both represented and unrepresented borrowers.

## IV.

We now determine the circumstances under which lenders may shift attorney review fees to borrowers. As discussed above, the trial court in *Iversen* and *Kelly* held that review fees could not be charged unless the borrower's attorney submitted documents that created "extra work" for the lender's attorney. *Turner, supra,* 314 *N.J.Super.* at 39, 713 *A.*2d 1068 (quoting decision of the Law Division). However, that interpretation is flawed and ignores the plain language of Section (d), specifically the terms "submit" and "loan documents."

In defining "loan documents" to include documents not prepared by the borrower's attorney, such as title commitments, the Legislature clearly expressed its view that review fees can be charged for the routine review by the lender's attorney of documents material to the loan submitted by the borrower's attorney or others. Moreover, giving the term "submit" its natural meaning, Section (d) allows a fee whenever an enumerated "loan document" is turned over to lenders' counsel. Accordingly, by adding the term "submit," the Legislature clearly intended to allow review fees even where the loan documents are prepared by third parties rather than by the borrower's attorney.

In addition, as the Appellate Division properly held, the trial court's "extra work" interpretation eviscerates *N.J.S.A.* 46:10A–6(c)(2)'s requirement that a lender disclose "a good faith estimate of any charge which the borrower will be expected to pay to the lender's attorney for … services …. [,]" prior to obtaining a commitment from the borrower. *Id.* at 41, 713 *A.*2d 1068

(quoting *N.J.S.A.* 46:10A–6(c)(2)). "A lender could not possibly predict in advance the extra work that a borrower might ask it to perform." *Ibid.* Accordingly, we find that Section (d) permits lenders to charge a fee for the review of loan documents prepared, or submitted by, or at the direction of the borrowers' attorneys *or the borrowers.*[1] That interpretation is consistent with the underlying statutory purpose of *N.J.S.A.* 46:10A–6, and furthers the public policy of this State.

### V.

■ Respondent, Collective Bank, a federally-chartered savings and loan association regulated by the Office of Thrift Supervision[2] ("OTS"), asserts that federal law preempts Section (d). Both the *Iversen/Kelly* trial court and the Appellate Division rejected that contention. We disagree with the lower courts, and find that Section (d) is preempted by federal banking regulations.

■ The preemption doctrine is rooted in the Supremacy Clause of Article VI of the United States Constitution. *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta,* 458 *U.S.* 141, 152, 102 *S.Ct.* 3014, 3022, 73 *L.Ed.*2d 664, 674–75 (1982). Congressional intent to preempt State law may be manifested "by express provision, by implication, or by a conflict between federal and state law." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 *U.S.* 645, 654, 115 *S.Ct.* 1671, 1676, 131 *L.Ed.*2d 695, 704 (1995).

Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress [ ] touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object

---

[1] In so doing, we emphasize that the review fees charged in these cases were modest, ranging from $100 to $170.

[2] The OTS is the successor agency to the Federal Home Loan Bank Board. The OTS is charged with regulating federally-chartered banks and credit unions.

sought to be obtained by federal law and the character of obligations imposed by it [ ] reveal[s] the same purpose."

[*Fidelity Fed., supra,* 458 *U.S.* at 153, 102 *S.Ct.* at 3022, 73 *L.Ed.*2d at 675].

When "compliance with both federal and state regulations is a physical impossibility[,]" state law is nullified to the extent of the conflict. *Ibid.* (internal quotations and citations omitted). Similarly, when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," state law is displaced. *Ibid.* (internal quotations and citations omitted). When a federal regulation conflicts with State law, the same preemption rules apply. *Id.* at 153–54, 102 *S.Ct.* at 3022–23, 73 *L.Ed.*2d at 675 (stating federal regulations have same preemptive force as federal statutes). As long as the agency: (1) intended to preempt state law; and (2) acted within the scope of its delegated authority, federal law will displace conflicting state laws. *Id.* at 153–54, 102 *S.Ct.* at 3022–23, 73 *L.Ed.*2d at 675. However, "preemption is not to be lightly presumed." *Franklin Tower One, L.L.C. v. N.M.,* 157 *N.J.* 602, 615, 725 *A.*2d 1104 (1999).

In 1933, Congress passed the Home Owners' Loan Act ("HOLA"), 12 *U.S.C.* § 1461 to- § 1468(c) (1999), which "provided for the creation of a system of federal savings and loan associations" to finance residential home purchases. *Fidelity Fed., supra,* 458 *U.S.* at 160, 102 *S.Ct.* at 3026, 73 *L.Ed.*2d at 679 (citing *S.Rep.No.* 91, 73d Cong., 1st Sess., 2 (1933)). Section 5(a) of HOLA created a Federal Home Loan Bank Board ("the Board") with broad power to promulgate rules and regulations to govern the lending practices of federal savings and loan associations. *Id.* at 161, 102 *S.Ct.* at 3026, 73 *L.Ed.*2d at 680 (stating "it would have been difficult for Congress to give the Bank Board a broader mandate") (internal quotations and citations omitted). In creating the Board, Congress expressed its intention that federal law would govern the terms of loan instruments issued by federal savings and loan associations. *Id.* at 164, 102 *S.Ct.* at 3028, 73 *L.Ed.*2d at 682.

Collective Bank argues that federal regulations promulgated by the OTS, specifically 12 *C.F.R.* §§ 545.32, 545.35 and 563.35, preempt *N.J.S.A.* 46:10A–6. Although those regulations have been removed from the Code of Federal Regulations pursuant to *Conflicts of Interest, Corporate Opportunity and Hazard Ins.*, 61 *Fed.Reg.* 60173 (1996) (November 27, 1996), they were in effect at the time of the transaction between Iverson and Collective.

12 *C.F.R.* § 545.32(b)(5) ("Section 545.32(b)(5)"), entitled *Initial loan charges*, stated:

> *Except as provided in § 563.35(d) of this chapter*, a Federal savings association may require a borrower to pay necessary initial charges connected with making a loan, including the actual costs of title examination, appraisal, credit report, survey, drawing of papers, loan closing, and other necessary incidental services and costs, in such reasonable amounts as the board of directors may fix. The Federal savings associations may collect the charges from the borrower and pay the persons rendering the services.
>
> [12 *C.F.R.* § 545.32 (1995) (emphasis added).]

12 *C.F.R.* § 563.35(d) ("Section 563.35(d)"), entitled *Payment of attorney's fee by home borrowers*, provided:

> *In connection with a loan on a home* ... a savings association or subsidiary thereof may require such borrower to reimburse it for legal services rendered by its attorney, or to directly pay such attorney for such services, *only if*:
>
> (1) Such attorney's fee is limited to legal services attributable to processing and closing such loan (and not unrelated services performed for the savings association ... by the attorney);
>
> (2) Such attorney's fee, if in excess of $100, is supported by a statement provided to the borrower at or prior to settlement which: [describes the legal services being performed and sets forth the time, hourly rate, basis for the fees, that the services are being performed for the savings association and that the services are being paid for by the borrower.]
>
> [12 *C.F.R.* § 563.35(d) (1995) (emphasis added).]

12 *C.F.R.* § 545.2 ("Section 545.2"), entitled *Federal preemption*, provided:

> The regulations in this part 545 are promulgated pursuant to the plenary and exclusive authority of the Office to regulate all aspects of the operations of Federal saving associations.... This exercise of the Office's authority *is preemptive of any state law purporting to address the subject of the operations of a Federal savings association.*
>
> [12 *C.F.R.* § 545.2 (1995) (emphasis added).]

In *Fidelity Federal,* the United States Supreme Court held that a Board regulation, 12 *C.F.R.* § 545.8–3(f) (1982), permitting due-on-sale clauses in federal savings and loan mortgage agreements, preempted a California law prohibiting restraints on alienation. *Fidelity Fed., supra,* 458 *U.S.* at 169–70, 102 *S.Ct.* at 3030–31, 73 *L.Ed.*2d at 685. The Court reversed the decision of a California appellate court which held that California law was not preempted because it was not incompatible with the federal regulation. *Id.* at 150, 102 *S.Ct.* at 3021, 73 *L.Ed.*2d at 673. The appellate court had reasoned that: (1) the federal rule was merely permissive; (2) both the federal and state laws were designed to assist financially-distressed home owners; and (3) California's rule concerned a substantive issue of law, and was not strictly a banking regulation. *Id.* at 150–51, 102 *S.Ct.* at 3020–21, 73 *L.Ed.*2d at 673.

In overturning the decision of the appellate court, the United States Supreme Court rejected the "permissive"/ "mandatory" distinction. Specifically, the Court held that the fact that a federal regulation is "permissive" does not eliminate a preemptive conflict. *Id.* at 155, 102 *S.Ct.* at 3023, 73 *L.Ed.*2d at 676 (stating conflict does not "evaporate" because federal regulation simply permits, but does not compel, the practice). "[I]f federal savings and loans were expected to conform to state law except where explicitly preempted in *HOLA* itself, the provisions incorporating specific aspects of state law [would be] needlessly repetitive." *Id.* at 163, 102 *S.Ct.* at 3027, 73 *L.Ed.*2d at 681. "By … limiting the availability of an option the Board considers essential to the economic soundness of the thrift industry, the State has created 'an [impermissible] obstacle to the accomplishment and execution of the full purposes and objectives' " of the Board's regulation. *Id.* at 156, 102 *S.Ct.* at 3023, 73 *L.Ed.*2d at 677.

The Court further reasoned that "Congress' explicit delegation of jurisdiction over the 'operation' of [federal savings and loan] institutions must empower the Board to issue regulations governing mortgage loan instruments, for mortgages are a central part of any savings and loan's 'operation.' " *Id.* at 161, 102 *S.Ct.* at 3026,

73 *L.Ed.*2d at 680. "Congress plainly envisioned that federal saving and loans would be governed by what the Board—not any particular State—deemed to be the 'best practices.' " . *Id.* at 162, 102 *S.Ct.* at 3026, 73 *L.Ed.*2d at 680. Although compliance with both laws was not a "physical impossibility," California law impeded federal objectives and therefore, was preempted. *Id.* at 155, 169–70, 102 *S.Ct.* at 3023, 3030–31, 73 *L.Ed.*2d at 676, 685–86.

Other state courts similarly have held that the OTS regulations governing federal saving and loan associations preempt state law. *See, e.g., Dime Savings Bank of New York v. State of New York,* 579 *N.Y.S.*2d 679, 174 *A.D.*2d 173 (App.Div.1992), *aff'd,* 639 *N.Y.S.*2d 102, 225 *A.D.*2d 581 (App.Div.1996)("*Dime* "); *Shea v. First Fed. Savings and Loan Ass. of New Haven,* 184 *Conn.* 285, 439 *A.*2d 997 (1981) (recognizing that federal regulations expressly permit federal savings and loan association to shift costs of legal services to borrowers).

In *Dime,* the New York Appellate Division addressed the preemptive effect of Section 545.32(b)(5). New York law prohibited lenders from passing mortgage recording taxes on to borrowers. *Dime, supra,* 579 *N.Y.S.*2d at 681. Section 545.32(b)(5), on the other hand, permitted federal savings and loans associations to charge borrowers for costs incurred in approving and extending loans. *Ibid.;* 12 *C.F.R.* § 545.35(b)(5). Because the laws conflicted, the court held that New York law was preempted by federal regulation, and was unenforceable against federal savings and loan associations. *Id.* at 174, 579 *N.Y.S.*2d 679. In finding preemption, the New York court reasoned that although the State can assess the tax, "it cannot, under the guise of this authority, or in the exercise of its police powers, interfere with the lending practices of Federally-chartered savings and loan associations, or prevent such lenders from recouping the costs of making loans by passing through the cost of the tax to their borrowers." *Ibid.*

Applying the preemption principles announced in *Fidelity Federal* and *Dime,* we find Section (d) is preempted by federal law. Section 545.32(b)(5) unambiguously allows federal savings and loan

associations to shift fees for initial charges, including the costs of title examination and the drawing of papers, "[e]xcept as provided in [Section] 563.35(d)." 12 *C.F.R.* § 545.32(b)(5). Section 563.35(d)(1) specifically allows federal banks to charge borrowers for attorney's fees for legal services as long as those fees are "attributable to processing and closing [a] loan." 12 *C.F.R.* § 563.35(d)(1).

Section 545.32(b)(5), therefore, does *not* exclude the attorney's fees permitted by Section 563.35(d) from the initial loan charges that a federal savings and loan association may require a borrower to pay. Rather, Section 545.32(b)(5) merely provides that unlike other initial loan charges, which can be fixed by the board of directors in "such reasonable amounts," initial loan charges consisting of attorney's fees must be fixed in accordance with Section 563.35(d). In other words, the Section 563.35(d) "exception" does not exclude legal fees from initial charges; *it specifically includes* attorney's fees within the scope of initial loan charges but "excepts" such fees from the list of initial loan charges that can be fixed by the board of directors, requiring instead that attorneys' fees for home borrowers be fixed in accordance with Section 563.35(d). Because Section 545.2 contains an express preemption clause stating that regulations promulgated in part under chapter 545 preempt "any state law purporting to address the subject of the operations of a Federal savings association," Section (d) is preempted by the fee shifting provisions of Section 545.32(b)(5). 12 *C.F.R.* § 545.2.

We observe that recent revisions of the regulations governing the lending practices of federal savings and loan associations emphasize that the OTS has long occupied the field of lending regulation for federal savings and loan associations, and continues to do so. On January 17, 1996, the OTS issued a final rule that updated and reorganized its banking regulations, adding a provision "restat[ing its] long-standing preemption principles ... that, with certain narrow exceptions, any state laws that purport to affect the lending operations of federal saving associations are

preempted." *Lending & Investment,* 61 *Fed.Reg.* 50951, *50952 (1996) ("Regulation 50951"). One provision of the new regulations, 12 *C.F.R.* § 560.2, specifically preempts any state statute, regulation, or judicial decision applying to loan-related fees, including initial charges. *Id.* at 50972. Regulation 50951 makes it abundantly clear that federal law has always preempted state regulation of federal savings and loans. Accordingly, we modify the judgment of the Appellate Division to the extent that it found no preemption.

## VI.

In accordance with the above analysis, we hold that *N.J.S.A.* 46:10A–6(d) applies equally to represented and unrepresented borrowers. There is no "extra work" requirement. Such a requirement has no basis in the statutory text and ignores major portions of the 1993 Amendment. By adding the term "submit," the legislature intended to clarify that a review fee can be charged where documents are merely turned over to lenders' counsel. That interpretation is consistent with Section (d)'s definition of "loan documents," as many items on that list are prepared by third parties, and are merely submitted by borrowers counsel. Allowing a review fee for any item included on that list regardless of who submits it, and regardless of the result of "extra work" required of lender's counsel, best integrates the statutory provisions and furthers the legislative purposes of *N.J.S.A.* 46:10A–6. We observe, however, implicit in those purposes is the Legislature's intention that review fees charged in residential loan transactions be reasonable and modest. The fees in the cases before us ranging from $100 to $170 represented such reasonable fees.

Further, we hold that *N.J.S.A.* 46:10A–6 is expressly preempted by federal banking regulations addressing the issue of attorney's fees. Mortgages comprise a critical aspect of a federal savings and loan association's operation. *Fidelity Fed., supra,* 458 *U.S.* at 161, 102 *S.Ct.* at 3026, 73 *L.Ed.*2d at 680. The ability to regulate fees associated with mortgage operations, in turn, strongly influ-

ences lending practices.  A prudent lender cannot issue a loan without first reviewing closing documents to ensure it has a valid lien on the mortgaged property.  If the bank cannot pass the costs associated with that review on to the consumer, it must raise interest rates, forego document review, or change its lending practices.  Unable to set its own fee regulations, a federal savings and loan association's ability to extend loans may be seriously compromised.  Congress, by enacting a pervasive scheme of federal regulations, demonstrated its intention to occupy the field of regulating attorney review fees charged by federal savings and loan associations in spite of state regulations to the contrary.

In accordance with this opinion, the judgment of the Appellate Division is modified and affirmed.

Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN, LONG, and VERNIERO join in Justice GARIBALDI's opinion.

*For modification and affirmance*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG and VERNIERO—7.

*Opposed*—None.