755 A.2d 578

PETER DELISA, PLAINTIFF–APPELLANT, v. COUNTY OF BERGEN, DEFENDANT AND THIRD PARTY PLAINTIFF–RESPONDENT, AND OFFICE OF THE PROSECUTOR, CHARLES BUCKLEY, ACTING PROSECUTOR FOR BERGEN COUNTY; JAMES TOBIN; RICHARD MUTI; FRANK CILENTO AND ALAN GRIECO, DEFENDANTS–RESPONDENTS, AND STATE OF NEW JERSEY, THIRD PARTY DEFENDANT–RESPONDENT.

Argued May 2, 2000—Decided July 25, 2000.

*Kevin M. Kiernan* argued the cause for appellant (*McDonough, Kiernan & Campbell*, attorneys).

*J.S. Lee Cohen* argued the cause for respondents Office of the Prosecutor, *Charles Buckley*, Acting Prosecutor for Bergen County, James Tobin, Richard Muti, Frank Cilento and Alan Grieco (*DeCotiis, Fitzpatrick & Gluck*, attorneys).

*Barbara H. Parker*, Assistant County Counsel, submitted a brief on behalf of the County of Bergen (*Elizabeth E. Randall*, County Counsel, attorney).

*Steven J. Zweig*, Deputy Attorney General, submitted a brief on behalf of the State of New Jersey (*John J. Farmer, Jr.*, Attorney General, attorney).

*Juan C. Fernandez*, Essex County Counsel, submitted a brief on behalf of *amicus curiae*, County of Essex.

PER CURIAM.

In *Higgins v. Pascack Valley Hospital,* 158 *N.J.* 404, 408, 730 *A.*2d 327 (1999), the critical issue was "whether the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –8, prohibits an employer from retaliating against an employee who 'blows the whistle' on a co-employee." We held that "[a]s long as a reasonable basis exists for a complaint about misconduct, whether of the employer or of a co-employee, the complaining employee should not be exposed to retaliation by the employer." *Higgins, supra,* 158 *N.J.* at 425, 730 *A.*2d 327.

In this matter the complaining employee did not complain to his employer, the Bergen County Prosecutor (Prosecutor), about the misconduct of co-employees. Rather, plaintiff alleges, and the allegation is undisputed, that he was directed by his employer to meet with investigators from the Prosecutor's office and the Attorney General's office to answer questions and provide testimony that supported criminal charges previously filed by the Prosecutor's office against two co-employees of the Prosecutor's office, Ed Denning and Michael Carlino. Plaintiff alleges that he was retaliated against and discharged by his employer as a direct result of the testimony that he provided concerning Denning and Carlino.

The legal issue is whether, pursuant to our decision in *Higgins,* plaintiff has asserted a sustainable cause of action under CEPA notwithstanding that his negative characterization of his co-employees' conduct occurred in the course of testimony to representatives of the Prosecutor's and Attorney General's offices. The Appellate Division, in a reported opinion, *DeLisa v. County of Bergen,* 326 *N.J.Super.* 32, 740 *A.*2d 648 (1999), affirmed the Law Division's grant of summary judgment dismissing the complaint, holding that plaintiff had not alleged a cause of action under CEPA because his testimony did not involve misconduct by his employer as is literally required by *N.J.S.A.* 34:19–3b, the subsection of CEPA that deals with testimony before public investigatory bodies. *DeLisa, supra,* 326 *N.J.Super.* at 39, 740 *A.*2d 648.

We now reverse the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings.

I

The facts material to the issue before us may briefly be summarized. In 1991 plaintiff was hired as an investigator in the Bergen County Prosecutor's office by then Prosecutor John J. Fahy.

In August 1994 Deputy Chief of Investigators Ed Denning and Lieutenant of Investigators Michael Carlino were charged by the Bergen County Prosecutor with theft by deception (*N.J.S.A.* 2C:20–4c) and official misconduct (*N.J.S.A.* 2C:30–2). The allegations supporting those charges were that Denning and Carlino used their official positions to exercise individually the right to purchase three vehicles leased to the Bergen County Narcotics Task Force (BCNTF or Task Force). Pursuant to the lease agreement, the Task Force held the option to purchase the vehicles at the end of the lease term.

At Prosecutor Fahy's request, the State Division of Criminal Justice superceded the Prosecutor in the conduct of the ensuing investigation. In August 1994 plaintiff was ordered by one of his superiors to meet with and provide testimony to investigators from the Prosecutor's and Attorney General's office concerning the charges against Denning and Carlino. Plaintiff alleges that his testimony supported those charges and indicated that Denning attempted to influence the award of the bid for new leased vehicles in an effort to facilitate his plan to purchase a vehicle for his daughter covered by the expiring lease agreement.

Subsequently, the Division of Criminal Justice declined to prosecute Denning and Carlino, but informed prosecutor Fahy that the evidence might provide grounds for administrative action. Fahy disagreed with that conclusion, emphasizing that plaintiff's testimony provided a basis for a criminal prosecution. Nevertheless, no prosecution ensued and Fahy filed administrative charges against both Denning and Carlino.

After Fahy resigned as prosecutor in March 1995, defendant Charles Buckley became the Acting Prosecutor. In the interim, Denning had resigned and the administrative charges against him were dismissed. The administrative proceeding against Carlino was resolved on March 9, 1995 when he pled guilty to a charge of Neglect of Duty. Buckley reinstated Carlino to duty effective December 6, 1994, fined him approximately $16,500 representing lost pay from August 5 to December 5, 1994, and then awarded him back pay for the period between December 5, 1994 and the date of Carlino's plea.

Denning and Carlino later filed a civil action against Bergen County that was settled by the payment of $125,000 to each of them.

Plaintiff alleges that defendants engaged in a series of retaliatory actions against him commencing in May 1995 and continuing until his discharge in March 1996, and that those retaliatory acts and his ultimate discharge were causally connected to his participation as a witness in the investigation of the charges against Denning and Carlino.

Defendants allege that plaintiff was discharged for good cause arising out of events completely unrelated to plaintiff's participation in the Denning and Carlino investigation. Defendants support the discharge primarily on the basis of plaintiff's allegedly false testimony in a criminal trial about the circumstances of his resignation from a prior position with the Broward County (Florida) Sheriff's Office that arguably prejudiced the presentation of the prosecution's case. In addition, defendants point to plaintiff's strained relationship with two local police departments, his imprudent conduct in revealing his status as an investigator over the Internet, and a variety of other past indiscretions that, according to defendants, cumulatively provided an independent explanation for his discharge.

The Law Division, relying on the Appellate Division's disposition in *Higgins*, see *Higgins v. Pascack Valley Hospital*, 307 *N.J.Super.* 277, 704 *A.2d* 988 (1998) (*Higgins I*), granted defendant's

motion for summary judgment. In *Higgins I,* the Appellate Division reasoned that, absent employer complicity, CEPA does not protect an employee who complains about misconduct of co-employees. Concluding that there had been no condonation or ratification of Denning's and Carlino's actions by the Bergen County Prosecutor, the Law Division determined that plaintiff's CEPA claim must be dismissed. The Law Division observed, however, that if its interpretation of CEPA were incorrect, there was sufficient evidence in the record from which "a rational fact finder could conclude that the proffered reasons [for plaintiff's discharge] were, in fact, not the real motivating reasons."

As noted, the Appellate Division, applying this Court's decision in *Higgins, supra,* 158 *N.J.* 404, 730 *A.*2d 327, concluded that plaintiff's CEPA claim was properly dismissed.

## II

In *Higgins, supra,* 158 *N.J.* at 419, 730 *A.*2d 327, the Court's opinion focused first on the provisions of *N.J.S.A.* 34:19-3, which, in relevant part, provides:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law . . .;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer . .; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .;

(2) is fraudulent or criminal; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare. . . .

We noted that although subsections a and b of the statute referred only to employer misconduct, subsection c, was not so

limited. *Higgins, supra,* 158 *N.J.* at 419, 730 *A.*2d 327. Accordingly, we observed:

> A plain reading of the statute suggests that the CEPA covers employees who object to the conduct of co-workers. The term "any" in subsection "c" indicates that the statute applies regardless of the source of the activity, policy or practice. Although subsections "a" and "b" limit the statute's application to policies, practices and activities "of" or "by" "the employer," subsection "c" contains no such limitation. The omission of the phrase "of the employer" in subsection "c" is too obvious to ignore.

[*Ibid.*]

The Court proceeded to consider the legislative history of CEPA, *id.* at 420, 730 *A.*2d 327, the underlying legislative purpose, *id.* at 420–21, 730 *A.*2d 327, and interpretations of whistleblower statutes by other courts throughout the country, *id.* at 422–24, 730 *A.*2d 327. We noted that the whistleblower statutes of several states "expressly protect employees who object to co-employees' activities." *Id.* at 423, 730 *A.*2d 327. We also referred to decisions in Illinois and Massachusetts recognizing a common-law cause of action on behalf of employees who are terminated for reporting to a public authority the illegal activities of a co-worker. *Id.* at 423–24, 730 *A.*2d 327 (citing *Palmateer v. International Harvester Co.,* 85 *Ill.*2d 124, 52 *Ill.Dec.* 13, 421 *N.E.*2d 876 (1981), and *Shea v. Emmanuel College,* 425 *Mass.* 761, 682 *N.E.*2d 1348 (1997)).

Relying on our review of the statutory purpose, CEPA's legislative history and precedents from other jurisdictions, we expressed a generalized conclusion that CEPA's expansive protection did not "depend on a strict parsing of employer and employee conduct." *Id.* at 421, 730 *A.*2d 327. We held that "[a]s long as a reasonable basis exists for a complaint about misconduct, whether of the employer or of a co-employee, the complaining employee should not be exposed to retaliation by the employer." *Id.* at 425, 730 *A.*2d 327. The Court explained:

> Misconduct of employees, like that of employers, can threaten the public health, safety, and welfare. Especially in hospitals and other health care institutions, a practice of a co-employee, like that of the employer, can threaten the health and safety of patients. For example, a paramedic's theft of patient medication, whether or not condoned by the hospital, could undermine public health. *Sometimes,*

*moreover, only an employee can bring a co-employee's wrongdoing to the attention of the employer or a public agency.* If left unprotected, employees who otherwise would complain about a co-employee might hesitate to come forward out of fear of retribution. A vindictive employer could resent disruption in the workplace or the disclosure of improper practices within the organization. In this context, "reporting a fellow employee's violation ... is not so different from traditional notions of whistleblowing." *Dudewicz v. Norris–Schmid, Inc.,* 443 *Mich.* 68, 503 *N.W.*2d 645, 648 (1993).

Nothing indicates that the Legislature intended that the CEPA's expansive protection should depend on a strict parsing of employer and employee conduct. "The Legislature obviously intended to provide a comprehensive and effective cause of action for retaliatory discharge." [*Young v. Schering Corp.,* 141 *N.J.* 16, 26, 660 *A.*2d 1153 (1995) ]. A solitary employee may not be able to determine whether an illegal activity is the isolated act of a single co-employee or a systemic practice. When an employee complains of the wrongdoing, he or she may not know whether the employer will condone the act. Failure to protect complaining employees therefore will inhibit them from reporting practices for which they reasonably believe their employer is responsible.

[*Id.* at 421, 730 *A.*2d 327 (emphasis added).]

Although the claim in *Higgins* fell under subsection c of the statute, the provision that makes no distinction between employers and employees, our decision in *Higgins* obviously was designed to afford the broadest protection under CEPA to employees retaliated against for objecting to the misconduct of co-employees. A construction of the whistleblower statute that would protect against employer retaliation an employee who communicated to the employer an *objection* concerning a co-employee's criminal conduct, see *N.J.S.A.* 34:19–3c, but would not protect that same employee if he or she *testified* before a public body investigating the co-employee's criminal conduct, see *N.J.S.A.* 34:19–3b, surely would be anomalous.

A settled principle is that "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good direction.' " *Schierstead v. City of Brigantine,* 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959) (quoting *Morris Canal & Banking Co. v. Central R.R. Co.,* 16 *N.J. Eq.* 419, 428 (Ch. 1863)). We also have observed that the spirit of the law should control "where a literal interpretation would create a manifestly absurd result." *Turner v. First Union*

*Nat'l Bank,* 162 *N.J.* 75, 84, 740 *A.*2d 1081 (1999). Moreover, we expressly noted in *Higgins, supra,* that sometimes "only an employee can bring a co-employee's wrongdoing to the attention of the employer *or a public agency." Id.* at 421, 730 *A.*2d 327 (emphasis added). That language clearly reflects our belief that CEPA's protection against employer retaliation extends to employees who communicate information either to employers *or* public bodies concerning co-employee misconduct encompassed by *N.J.S.A.* 34:19–3.

## III

■ In view of our conclusion about the correct interpretation of our holding in *Higgins,* we reverse the grant of summary judgment in favor of defendants. Although the Law Division found that a rational fact finder could conclude that the non-retaliatory reasons for discharging plaintiff were pretextual, we express no view whatsoever on that issue. Consistent with our opinion in *Golden v. County of Union,* 163 *N.J.* 420, 433, 749 *A.*2d 842 (2000), "so long as his actions are not invidiously discriminatory *or contrary to some other pertinent law,* the prosecutor may discharge plaintiff without a formal hearing, in keeping with the at-will relationship established by statute." (Emphasis added). See *N.J.S.A.* 2A:157–10. Accordingly, there being no allegation of discrimination, if plaintiff's discharge did not violate CEPA his discharge is lawful because he served at the will of the Prosecutor.

## IV

For the reasons stated, we reverse the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Justices O'HERN, STEIN, COLEMAN, LONG and VERNIERO—5.

*Opposed*—None.