762 A.2d 237 (2000)
335 N.J. Super. 198
Billy Dean MAYFIELD and Karen Mayfield, Plaintiffs-Respondents,
v.
COMMUNITY MEDICAL ASSOCIATES, P.A., Joseph W. Schauer, III, M.D., Joseph W. Schauer, Jr., M.D., Ina J. Kelemer, M.D., Keith J. Keefer, M.D., Deepak Taneja, M.D., and Neil Agrawal, M.D., Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 2000.
Decided November 28, 2000.
*238 Lauren H. Walter argued the cause for appellants (Ronan, Tuzzio & Giannone, Tinton Falls, attorneys; Ms. Walter, of counsel and on the brief).
John F. McLaughlin argued the cause for respondents (Auerbach, Ryan, McLaughlin & Genz, attorneys; Philip G. Auerbach, Red Bank, of counsel; Mr. McLaughlin, on the brief).
Before Judges PRESSLER, KESTIN, and ALLEY.
*239 The opinion of the court was delivered by ALLEY, J.A.D.
This appeal presents another opportunity for interpretation and application of the affidavit of merit statute, N.J.S.A. 2A:53A-27. It arises in the context of a medical malpractice action and involves both an affidavit of merit timely filed but not
served, and an expert's report timely served but not sworn.
Plaintiffs' complaint was filed on April 14, 1999. It alleges that Billy Dean Mayfield was a patient of defendant Community Medical Associates and of various doctors in that practice, that they engaged in medical malpractice by failing to assist him in timely renewing a prescription for a particular anti-coagulant medication, and that, as a result, he suffered severe medical problems, hospitalization, and substantial economic loss. His wife asserts a per quod claim.
On April 28, 1999, plaintiffs' counsel filed with the court an affidavit of merit signed by Salvatore Bernardo, Jr., M.D. Solely through inadvertence of counsel, the affidavit was not served on defense counsel until almost one year later, on April 6, 2000. The document, specifically designated as an "affidavit of merit," appears to have been duly sworn to and subscribed by Dr. Bernardo before a notary public of New Jersey on February 26, 1999, and reads in material part as follows:
SALVATORE BERNARDO, JR., M.D., OF FULL AGE BEING DULY SWORN ACCORDING TO LAW UPON HIS OATH, DEPOSES AND SAYS:
1. I am a physician licensed in the State of New Jersey. I have been licensed since 1994 and have been board certified in family medicine since 1996.
2. I am a member of a medical group which has six offices in Monmouth County. I recently started treating Billy Dean Mayfield.
3. I am aware of what occurred to Mr. Mayfield while he was a patient at Community Medical Associates. He has discussed the matter with me and in my view, assuming everything he said is accurate, there is definitely merit in this suit against the doctors in question and their staff.
4. I have no financial interest in the outcome of this matter.
The answer of all defendants was filed July 28, 1999. Plaintiffs' counsel provided an expert's report to defense counsel on September 24, 1999. The report, dated September 7, 1999, is unsworn and uncertified, but appears to be signed by Henry D. Berkowitz, M.D., and is addressed to plaintiff's counsel. It states:
At your request I am responding to your letter of 08/24/99.
Mr. Mayfield has been my patient for some time and has undergone very complicated vascular surgery related to multiple graft occlusions of his right leg. He was found to have a hypercoagular state and because of this was placed on long-term anticoagulation with Coumadin. Apparently Mr. Mayfield's prescription for Coumadin expired and when he called his primary care physicians they refused to renew the prescription for reasons which are completely unclear to me. As a result Mr. Mayfield thrombosed his vein graft which then had to be opened with lytic therapy and then we had to correct some underlying vein graft abnormalities.
Mr. Mayfield was known by his primary care physicians to be on long-term anticoagulations [sic] and the failure to renew his prescription was a significant deviation from the standard of medical care.
Defendants filed a motion on April 5, 2000, seeking an order dismissing the complaint with prejudice for failure to produce an affidavit of merit. The next day, plaintiffs' counsel, having learned that the filed *240 affidavit of merit had not been served, then sent it on to defense counsel. The motion court ruled that plaintiffs had substantially complied with the statute and denied defendants' motion to dismiss. Defendants now appeal that interlocutory order pursuant to leave granted. We affirm.

I
We start with the language of the pertinent section of the affidavit of merit statute itself, which provides:
In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause. The person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.

[N.J.S.A. 2A:53A-27.]
Substantial rights are put in issue by a motion that asserts a failure to comply with this provision, because under another section of the statute, "[i]f the plaintiff fails to provide an affidavit or a statement in lieu thereof, it shall be deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. The motion court invoked the doctrine of substantial compliance in denying the motion to dismiss, relying on Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 708 A.2d 401 (1998), where the Supreme Court stated:
Courts invoke the doctrine of substantial compliance to "avoid technical defeats of valid claims." Zamel v. Port of New York Authority, 56 N.J. 1, 6, 264 A.2d 201 (1970). In Zamel, the plaintiffs had failed to comply with the notice of claim requirement. Id. at 5, 264 A.2d 201. The plaintiffs had, however, informally communicated to the defendant all the information required in a formal notice of claim. Id. at 6-7, 264 A.2d 201. The Court applied the doctrine of substantial compliance, finding "nothing whatever in the pertinent statutory history or terminology to indicate that [the] Legislature ever meant to exclude the highly just doctrine of substantial compliance...." Id. at 6, 264 A.2d 201. Because the defendants were not prejudiced by the plaintiffs' failure to comply strictly and the defendants had the relevant information, the Court ruled the plaintiffs were in substantial compliance with the notice of claim requirement. Id. at 6-7, 264 A.2d 201.
The doctrine of substantial compliance requires that the defaulting party show the following:
(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute. [Bernstein v. Board of Trustees of Teachers' Pension & Annuity Fund, 151 N.J.Super. 71, 76-77, 376 A.2d 563 (App.Div.1977).]

*241 [153 N.J. at 239, 708 A.2d 401]
The attorney in Cornblatt had provided to the defense, not an affidavit of merit, but a certification conforming to R. 1:4-4(b), which provides that "[i]n lieu of the affidavit required by these rules, the affiant may submit the following certification...." The Supreme Court held that the statute "is the exclusive authority governing the document to be filed ..." but that "... it does not follow that the Legislature intended that under no circumstances could the filing of a certification satisfy the statutory requirement or, stated differently, that the filing of a certificate instead of an affidavit would always constitute a fatal failure of compliance mandating the dismissal of the action." [Ibid., 153 N.J. at 238, 239, 708 A.2d 401]
In determining that the certification provided in Cornblatt substantially complied with the statute, the Court stated:
Despite the Legislature's clear language requiring an affidavit, there is nothing reflective in the objectives of the Affidavit of Merit Bill or its history that suggests the Legislature intended to foreclose the familiar doctrine of substantial compliance in the affidavit of merit context.
In light of the doctrine of substantial compliance, which requires reasonable effectuation of the statute's purpose, as in Zamel, and the existing practices in this general area that attempt to reconcile convenience and truth under Rule 1:4-4(b), there is no reason to infer that the Legislature intended that the statute be applied literally and strictly, rather than in a manner that would assure substantial compliance with its essential provisions. Thus, we recognize that, under certain circumstances, a certification could satisfy the purpose of the affidavit requirement as well as the general purpose of the statute. Those circumstances would also include at the very least the timely filing of a certification otherwise complying with all of the specifications for an affidavit of merit; an adequate and reasonable justification and a convincing explanation of just cause and excusable neglect for submitting a certification rather than an affidavit; and, further, that the adverse party was not prejudiced and obtained the requisite notice in that the certification contained the quality and level of information contemplated by the affidavit requirement. Further, a relevant circumstance would involve the plaintiff undertaking prompt measures to comply fully with the statute, including specifically the filing of an affidavit or the agreement of an adversary that the certification provided fully meets the substantive requirements of the statute. We determine that under such circumstances, the statutory requirement for the affidavit of merit would be deemed to have been met by the initial filing of a certification instead of an affidavit of merit.

[Ibid., 153 N.J. at 240, 708 A.2d 401.]

II
In attempting to discern the meaning of statutory provisions, we must be mindful of the measure's purpose and its plain language. In a pre-Cornblatt decision, In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997), the Supreme Court observed that the affidavit of merit statute's purpose "was to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious." And in Cornblatt, the Court set forth a detailed reminder of the guidelines of statutory interpretation, stating:
We have "emphasized repeatedly that when interpreting a statute, our overriding goal must be to determine the Legislature's intent." State, Dep't of Law & Pub. Safety v. Gonzalez, 142 N.J. 618, 627, 667 A.2d 684 (1995) (citing Young v. Schering Corp., 141 N.J. 16, 25, 660 A.2d 1153 (1995); Roig v. Kelsey, 135 N.J. 500, 515, 641 A.2d 248 (1994); Jacobitti v. Jacobitti, 135 N.J. 571, 579, 641 A.2d 535 (1994); Lesniak v. Budzash, *242 133 N.J. 1, 8, 626 A.2d 1073 (1993)). Ordinarily, the language of the statute is the surest indicator of the Legislature's intent. Strasenburgh v. Straubmuller, 146 N.J. 527, 539, 683 A.2d 818 (1996) (citing Medical Soc'y v. State, Dep't of Law & Pub. Safety, 120 N.J. 18, 26, 575 A.2d 1348 (1990)). "If the language is plain and clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms." State, Dep't of Law & Pub. Safety v. Bigham, 119 N.J. 646, 651, 575 A.2d 868 (1990). However, if the language has more than one possible interpretation, the court will look beyond the language to determine the Legislature's intent. Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 211, 584 A.2d 784 (1991).
Thus, in the scheme of statutory construction, "the first step is the examination of the provisions of the legislative enactment to ascertain whether they are expressed in plain language that, in accordance with ordinary meaning, clearly and unambiguously yields only one interpretation." Richard's Auto City, Inc. v. Director, Div. of Taxation, 140 N.J. 523, 531, 659 A.2d 1360 (1995). When engaging in this analysis, if the Legislature has not provided otherwise, words are to be given "`ordinary and well-understood meanings.'" Manalapan Realty, L.P. v. Township Comm. of Manalapan, 140 N.J. 366, 383-84, 658 A.2d 1230 (1995) (quoting Great Atl. & Pac. Tea Co. v. Borough of Point Pleasant, 137 N.J. 136, 143-44, 644 A.2d 598 (1994); Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 182, 411 A.2d 704 (1980)).

[153 N.J. at 231, 708 A.2d 401.]
In our analysis, we are also mindful that, as recently stated in De Lisa v. County of Bergen, 165 N.J. 140, 147, 755 A.2d 578 (2000):
[a] settled principle is that "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as `consonant to reason and good direction.'" Schierstead v. City of Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959) (quoting Morris Canal & Banking Co. v. Central R.R. Co., 16 N.J.Eq. 419, 428 (Ch.1863)). We also have observed that the spirit of the law should control "where a literal interpretation would create a manifestly absurd result." Turner v. First Union Nat'l Bank, 162 N.J. 75, 84, 740 A.2d 1081 (1999).
Courts thus do not slavishly limit themselves to the dry words of legislation nor rely on mere abstract logic to determine what interpretation of a statute would fulfill the Legislature's purpose. More is called for than a merely mechanical analysis. Machines can perform mechanical tasks, but judgment is necessary to reach a result informed by intelligence. The concept of substantial compliance is as relevant to this statute as to any other. It is a concept that requires a court to go beyond the literal language in order to implement the legislative intent and its policy mandate. Thus, although the affidavit of merit statute requires an affidavit, not a certification, the Supreme Court was asked in Cornblatt to hold that a certification would satisfy the statutory mandate under certain circumstances, and it did so hold. This result supplements the statutory language, but does not contradict it. To the contrary, it is a result entirely consistent with the legislative will.
Judge Learned Hand's observations in Central Hanover Bank & Trust Co. v. Commissioner of Internal Revenue, 159 F.2d 167, 169 (2d Cir.1947), cert. denied, 331 U.S. 836, 67 S.Ct. 1518, 91 L.Ed. 1848 (1947), remain useful when considering the dangers of over-reliance on the literal words of the provision being interpreted:
There is no more likely way to misapprehend the meaning of languagebe it in a constitution, a statute, a will or a contractthan to read the words literally, forgetting the object which the document as a whole is meant to secure.

*243 Nor is a court ever less likely to do its duty than when, with an obsequious show of submission, it disregards the overriding purpose because the particular occasion which has arisen, was not foreseen. That there are hazards in this is quite true; there are hazards in all interpretation, at best a perilous course between dangers on either hand; but it scarcely helps to give so wide a berth to Charybdis's maw that one is in danger of being impaled upon Scylla's rocks.
Here, we are called upon to examine whether the denial of the motion to dismiss was a proper application of the substantial compliance doctrine. Thus, we are called on to consider whether its grant would have been no more than the unjust and sterile outcome of purely mechanical reasoning, or whether, on the other hand, the motion's denial was at odds with a result that the true purpose of the affidavit of merit statute compels.

III
The proper limits as to how far a court may go in finding flexibility in the words of the affidavit of merit statute are set forth in Cornblatt's five-part test:
(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.

[153 N.J. at 239, 708 A.2d 401.]
To apply this test, we turn to the particulars of the documents and conduct that plaintiffs in this case assert substantially complied with the statute, namely Dr. Bernardo's affidavit of merit and Dr. Berkowitz's expert report. First, as to lack of prejudice to defendants, we see no prejudice whatever that would result to defendants, other than that they would have to defend against a potentially meritorious claim, which is not legal prejudice. Certainly, there has been no showing of prejudice to defendants that would outweigh the strong preference for adjudication on the merits rather than final disposition for procedural reasons, see Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107-08, 275 A.2d 433 (1971); In re Comm'r of Insurance's Issuance of Orders, 274 N.J.Super. 385, 396, 644 A.2d 616 (App.Div.1993), aff'd, 137 N.J. 93, 644 A.2d 576 (1994), or would warrant visiting on the innocent clients an error of their attorney, see Zaccardi v. Becker, 88 N.J. 245, 253, 440 A.2d 1329, (1982); Irani v. K-Mart Corp., 281 N.J.Super. 383, 388, 657 A.2d 911 (App.Div.1995); Savoia v. F.W. Woolworth Co., 88 N.J.Super. 153, 160-61, 211 A.2d 214 (App.Div.1965). Moreover, with respect to prejudice, we have not been told, for example, of any loss of evidence or undue additional defense costs that could result from allowing plaintiffs' case to proceed.
Second, with respect to "a series of steps taken to comply with the statute involved," it is evident that plaintiffs took practically all the steps calculated to assist them to meet the requirement that "plaintiffs in malpractice cases ... make a threshold showing that their claim is meritorious." In re Petition of Hall, supra, 147 N.J. at 391, 688 A.2d 81. They had in hand, before the complaint was filed, an affidavit that, liberally construed, appears to conform to the statutory requirements. They filed it with the court.[1] Plaintiff's one misstep respecting the affidavit was in not serving it timely on defendants even though they had filed it with the court at the very outset of the litigation. With respect to the Berkowitz report, it is a formal, albeit terse, written report on the letterhead of a medical doctor who thereby *244 has put his reputation on the line as assuredly as if he had sworn to the truth of the document. And this report, though not sworn to, has the content that the statute demands, namely, it fulfills the requirement that the professional attest that "there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27.
The third requirement under Cornblatt, "a general compliance with the purpose of the statute," in our view has been amply demonstrated, as has the fourth, "a reasonable notice of petitioner's claim," which is evident from the content of the documents themselves, and also appears from plaintiffs' complaint. Finally, as to the reasonable explanation for the failure to comply, while mere inadvertence of counsel may not in and of itself suffice to meet this part of the test, in our view, taking the remarkable degree of plaintiffs' compliance in combination with the imperative to avoid unwarranted dismissals of meritorious claims, we are satisfied that, as to this fifth factor, counsel's diligence in all other respects should be deemed a sufficiently reasonable explanation as to enable him and his client to avoid litigation disaster for a wholly inadvertent and non-prejudicial mistake.

IV
In summary, what is beyond legitimate dispute with respect to Dr. Bernardo's affidavit of merit is this. It is a document that in form meets the requirement of the statute that an affidavit be the document provided. It was not created after the expiration of the statutory time but existed from the outset of the case. It was timely disclosed in the sense of being included in the public record of the case, though not in the sense of being physically delivered to defense counsel. It was physically provided to defense counsel the day after plaintiff's counsel learned of the mistaken failure to provide it initially. It shows the alleged underlying merits of the action to the same extent as would a document whose service on defense counsel was literally made as directed by the statute. It meets the five-part Cornblatt test for substantial compliance. Its acceptance as conforming under the statute would not in any way contravene the statutory purpose. We conclude that these circumstances impel the conclusion that with respect to this document plaintiffs have substantially complied with the statute and that the motion to dismiss was properly denied.
With respect to the opinion letter of Dr. Berkowitz, it conforms in substance though not in literal form to the statutory specifications, being a letter rather than an affidavit. It was timely provided in fact to defense counsel within the initial 60-day, statutory period. It shows the alleged underlying merits of the action to the same extent as would a document whose form literally complied with the statute. It meets the five-part Cornblatt test for substantial compliance. Its acceptance as conforming under the statute would not in any way contravene the statutory purpose. In these circumstances it is highly appropriate, and consistent with the doctrine of substantial compliance, to hold that the Berkowitz opinion complies with the statute.
In this case then, we are satisfied that it would be wholly counter to the remedial purposes of the statute to dismiss this apparently meritorious action based on what would be no more than a merely mechanical application of the dry statutory words. It has not been urged to us, nor could it be, that our Legislature enacted the statute because it was either anti-plaintiff or anti-defendant, or that its purpose was to create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims. We decline to interpret the statute in a *245 manner that would be consistent only with these non-existent purposes and that would fail to advance one iota its remedial purposes. The legislative target was frivolous claims, and inasmuch as the Legislature did not preclude the applicability of the substantial compliance doctrine in connection with this statute, we are free, within the confines of the doctrine as delineated in Cornblatt, to conclude that plaintiffs' actions and documents meet the test. We do so conclude, and we make this determination both as to the filed but late-served Bernardo affidavit of merit itself, and as to the signed but unsworn and uncertified Berkowitz report. In other words, we conclude that each of these documents constituted substantial compliance, and even more so when considered together.
In Ricra v. Barbera, 328 N.J.Super. 424, 430-31, 746 A.2d 68 (App.Div.2000), the court held that an unsworn and uncertified expert's report did not substantially comply and that the action should be dismissed, reasoning:
We conclude, therefore, that an affidavit, with its formality of execution, is the required method of compliance in all but unusual circumstances.
We also recognize that the requirement of an affidavit is designed to achieve the Legislature's goal of screening claims for merit. See Cornblatt, supra, 153 N.J. at 242, 708 A.2d 401. As the Court noted in Cornblatt, an affidavit requires an oath or affirmation taken before another person having the authority to administer oaths or affirmations. Id. at 236, 708 A.2d 401. It replicates the requirement at trial that a witness, expert or otherwise, be sworn before testifying. We glean a legislative intent and recognition that if a claimant is unable to procure an expert willing to submit to the formality of an affidavit, then it would be fair to infer that the claimant would not be able to support his or her claim at trial.
Moreover, submission of an unsworn and uncertified report offered in satisfaction of the statute would nullify the statute. Current court rules and rules in effect when the Legislature passed the statute require a plaintiff to submit an expert's report to a defendant requesting it. R. 4:17-4(e). See In re Petition of Hall, supra, 147 N.J. at 392, 688 A.2d 81. It is a fair inference that the Legislature intended the statute to require more than mere compliance with R. 4:174(e). Cf. Palanque v. Lambert-Woolley, 327 N.J.Super. 158, 742 A.2d 1002 (App.Div. 2000) (holding that "the fact [that] plaintiff had an expert report in her possession before filing suit does not satisfy the statute.") [Footnote omitted]
We respectfully disagree with Ricra insofar as it is at variance with our decision that the Berkowitz report was, under all the attendant circumstances here present, substantially compliant with the statute. We do not disagree with Ricra's conclusions as to the preferability of the more solemn form of document, that is, an affidavit, as opposed to a signed report. We carefully limit the extent of our ruling, however, because we are not declaring a general exception to the requirement of an affidavit, but only an exception in extraordinary circumstances, a limitation we understand was approved by Cornblatt. Attorneys and physicians would be unwise to interpret our decision as giving them carte blanche to deviate from the statute, and if particular attorneys or doctors choose to go consistently or frequently to the well of substantial compliance, it could surely be at their peril. They might indeed find that conduct of that nature would be deemed business as usual rather than extraordinary circumstances. We do not here intend to carve out general sweeping exceptions from the statute's mandate. In the present very specific and limited circumstances, however, remembering that the report's content must substantially correspond to the statute's requirements for affidavits, and that a physician substantially commits his professional reputation to a written report prepared for disclosure to *246 the opposing party in litigation, we are satisfied that our decision, though not consistent with Ricra, represents the appropriate application of the statute.

V
The order appealed from is affirmed and the action is remanded to the Law Division.
NOTES
[1] The motion court considered this to be "notice to the world." We do not, however, support such a description of the circumstances as in any way converting the burden on plaintiff to provide the affidavit into a burden on defendants to chase the affidavit down.