**Jan Klein KINDIG, individually and as Personal Representative for the Estate of Lester Kindig, Plaintiff,**

v.

**Lance GOOBERMAN, M.D.; David Bradway, M.D., John Doe Professional Corporations, Partnerships or Other Entities/Individuals (A–Z) jointly, severally, and in the alternative, Defendants.**

**No. CIV.A. 00–03245.**

United States District Court, D. New Jersey.

July 17, 2001.

John M. Amorison, Mullica Hill, NJ, for Plaintiff.

John A. Talvacchia, Stahl & DeLaurentis, P.C., Mount Laurel, NJ, for Defendants Lance Gooberman, M.D. and David Bradway, M.D.

OPINION

RODRIGUEZ, District Judge.

## I. INTRODUCTION

Plaintiff, Jan Klein Kindig, filed a medical malpractice complaint against Defendants, Lance Gooberman, M.D., David Bradway, M.D., et al., alleging that Defendants' negligence in performing a rapid opioid detoxification procedure resulted in the death of her companion Lester Kindig. Defendants have filed a motion to dismiss, which claims Plaintiff's expert report does not comply with New Jersey's affidavit of merit statute. For the reasons contained herein, this motion will be continued for thirty days.

## II. FACTS

Plaintiff, a resident of California, was the companion of the deceased, Lester Kindig, also a resident of California, and is the administratrix of his estate. On July 2, 1998, Kindig underwent a rapid opioid detoxification procedure performed by Defendant David Bradway, M.D., a licensed and practicing physician in New Jersey specializing in the field of opiate detoxification. The procedure was performed in the Merchantville, New Jersey facilities of Defendant Lance Gooberman, M.D., also a licensed and practicing physician in New Jersey specializing in the field of opiate detoxification. After the detoxification

procedure, Plaintiff assisted Kindig to a motel, where some time prior to 9:00 A.M. on July 3, 1998, Kindig died.

According to Plaintiff's expert report[1] prepared by clinical pharmacologist Frederick J. Goldstein, Ph.D., Kindig stated on several forms that he had been using heroin at a rate of two to three grams per day. Kindig also stated that he had not used cocaine for at least twenty-four hours prior to the procedure, however no testing confirmed Kindig's statement. During the rapid opioid detoxification procedure performed by Defendants, a naltrexone pellet ("Revia") was implanted in the left lower quadrant of Kindig's abdomen.

The 1998 Physicians' Desk Reference (PDR) states:

Revia is contraindicated in:

1) Patients currently receiving opioid analgesics

2) Patients currently dependent on opioids

3) Patients in acute opioid withdrawal

4) Any individual who has failed the NARCAN challenge test or who has a positive urine screen for opioids

IF THERE IS ANY QUESTION OF OCCULT OPIOID DEPENDENCE, PERFORM A NARCAN CHALLENGE TEST.

*1998 Physicians Desk Reference* 872 (52d ed.1998).

Goldstein stated he could not find in the records whether the Narcan challenge test had been performed on the deceased prior to the implantation of Revia. According to Goldstein, the assistant medical examiner of Burlington County found opioids, other central nervous system depressants, and other drugs in Kindig and listed Kindig's cause of death as an "adverse reaction to drugs and rapid opiate detoxification."

Based on the toxicological information received from the medical examiner, Goldstein concluded that the dose of the implanted Revia was lower than needed to protect Kindig from an overdose of opiates. Goldstein also reported that Kindig experienced an enhanced fatal effect due to the combination of his opiates with other central nervous system depressants. Therefore, Goldstein concluded, with a reasonable degree of scientific and pharmacological certainty, that the treatment given by Defendants to Kindig was "below the standard of clinical pharmacological care and led to his death."

Defendants argue that Plaintiff did not comply with the New Jersey affidavit of merit statute and, therefore, Plaintiff's complaint should be dismissed with prejudice. Plaintiff opposes Defendants' motion by arguing that she substantially complied with the affidavit of merit statute and that Defendants' emphasis of form over substance is contrary to the legislative purpose of the statute.

## III. PROCEDURAL HISTORY

Plaintiff filed her complaint on June 29, 2000 and subsequently filed an initial expert report with the court on July 14, 2000. On September 15, 2000, both parties agreed to a thirty-day extension for Defendants to answer, which was then filed on October 10, 2000. On November 2, 2000, Plaintiff forwarded an expert report to Defendants. Defendants filed this motion on March 20, 2001. Plaintiff's opposition brief included an updated expert report.

## IV. DISCUSSION

### A. Affidavit of Merit Statute

Defendants move to dismiss pursuant to New Jersey statute 2A:53A–27,–29, which states:

---

1. The only other substantive information available regarding the facts of this case is obtained from Plaintiff's expert report. The court neither accepts nor discounts this information at this time.

In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause. The person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.... If the plaintiff fails to provide an affidavit or a statement in lieu thereof, pursuant to section 2 or 3 of this act, it shall be deemed a failure to state a cause of action.

N.J. Stat. Ann. §§ 2A:53A–27,–29 (West 2000).

▮ Federal courts sitting in diversity must apply New Jersey's affidavit of merit statute. *See Chamberlain v. Giampapa,* 210 F.3d 154, 157 (3d Cir.2000). A court will consider the New Jersey legislature's purpose for enacting such a statute, as well as how the New Jersey courts have interpreted and applied the statute.

▮ Recently, the New Jersey Supreme Court stated, "Our case law implementing the [affidavit of merit] statute has acknowledged repeatedly that the primary purpose of the statute is 'to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early state of litigation.'" *Fink v. Thompson,* 167 N.J. 551, 772 A.2d 386, 391 (2001) (quoting *In re Petition of Hall,* 147 N.J. 379, 688 A.2d 81, 87 (1997)) (other citations omitted). This threshold requirement seeks to balance the interests of reducing frivolous lawsuits and the "imperative of permitting injured plaintiffs the opportunity to pursue recovery from culpable defendants." *Id.* (citing *Burns v. Belafsky,* 166 N.J. 466, 766 A.2d 1095, 1099 (2001)). Failure to comply with the statute, either strictly or substantially, will result in dismissal with prejudice. *Cornblatt v. Barow,* 153 N.J. 218, 708 A.2d 401, 415 (1998).

## B. Plaintiff's Expert Report Substantially Complies with Affidavit of Merit Statute

▮ In recent decisions, the New Jersey Supreme Court has held that the purpose of the affidavit of merit statute does not require strict compliance. *Fink,* 772 A.2d at 392 (N.J.2001); *Galik v. Clara Maass Med. Ctr.,* 167 N.J. 341, 771 A.2d 1141, 1148 (2001); *Cornblatt v. Barow,* 153 N.J. 218, 708 A.2d 401, 411 (1998). Where there has not been strict compliance with the statute, courts should apply a five-factor substantial compliance test:

The doctrine of substantial compliance requires that a defaulting party demonstrate the following: (1) lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute

involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute. *Fink,* 772 A.2d at 392; *Galik,* 771 A.2d at 1149; *see Cornblatt,* 708 A.2d at 412.

The doctrine of substantial compliance "requires a fact sensitive analysis involving the assessment of all the idiosyncratic details of a case to determine whether 'reasonable effectuation of the statute's purpose has occurred.'" *Galik,* 771 A.2d at 1151 (quoting *Cornblatt,* 708 A.2d at 411). More specifically, because the legislature did not intend the statute to be applied literally and strictly, in each case the court is "required to assess the facts against the clearly defined elements to determine whether technical non-conformity is excusable." *Galik,* 771 A.2d at 1149.

### 1. Lack of prejudice to the defending party

This Court's acceptance of Goldstein's report would not prejudice Defendants. In a recent New Jersey appellate division medical malpractice case,[2] the plaintiff filed but did not serve an affidavit of merit and timely served an unsworn expert report. *See Mayfield v. Cmty. Med. Assoc.,* 335 N.J.Super. 198, 762 A.2d 237, 239 (Ct. App.Div.2000). The court determined that permitting two expert reports to satisfy the affidavit of merit statute did not prejudice the defending parties. *Id.* at 243. The court stated, "[W]e see no prejudice whatever that would result to defendants, other than that they would have to defend

against a potentially meritorious claim, which is not legal prejudice." *Id.* The defendants had not shown how they would be prejudiced, by, for example, any loss of evidence or undue additional defense costs. *Id.* Additionally, there had been "no showing of prejudice to defendants that would outweigh the strong preference for adjudication on the merits rather than final disposition for procedural reasons." *Id.*

The New Jersey Supreme Court recently applied the reasoning from *Mayfield* in *Galik v. Clara Maass Med. Ctr.,* 167 N.J. 341, 771 A.2d 1141, 1151 (2001). In *Galik,* the plaintiff served two unsworn and uncertified expert reports to the defendants' insurance carriers. *Id.* at 1146. The court quoted *Mayfield* and held, "[T]here is no evidence in the record that any defendant has been prejudiced by plaintiff's filing of an unsworn and uncertified expert's report approximately eight months before filing the complaint." *Id.* at 1151.

Similarly, Defendants have not shown how this Court's acceptance of Goldstein's report would prejudice them. Defendants do not mention in either their motion to dismiss or their letter brief how the expert report would cause them any undue burden. Defending a meritorious claim does not prejudice Defendants, and, therefore, Plaintiff's expert report satisfies the first factor of the substantial compliance test.

### 2. Series of steps taken to comply with the statute

Plaintiff took a "series of steps" that demonstrate substantial compliance with

---

**2.** In *Galik v. Clara Maass Med. Ctr.,* 167 N.J. 341, 771 A.2d 1141 (2001) the New Jersey Supreme Court explained that *Cornblatt v. Barow,* 153 N.J. 218, 708 A.2d 401 (1998) had been widely misunderstood and that the appellate division was split as to its meaning. *Galik,* 771 A.2d at 1150. The *Galik* court held that *Mayfield* correctly interpreted *Corn-* blatt, while *Ricra v. Barbera,* 328 N.J.Super. 424, 746 A.2d 68 (App.Div.2000) incorrectly interpreted *Cornblatt.* *Galik,* 771 A.2d at 1150. Defendants relied, in part, on *Ricra* to support their motion to dismiss. Because the New Jersey Supreme Court disapproved of the reasoning in *Ricra, Ricra* no longer supports Defendants' arguments.

the statute. In *Galik*, an initial report was prepared by the plaintiff's experts and forwarded to the defendants' insurance carriers prior to the filing of the plaintiff's complaint. *Galik*, 771 A.2d at 1144. Then, the initial report and a supplementary expert report were provided to all the defendants after the filing of the complaint. *Id.* The court held that, although the expert reports were not technically affidavits of merit and were not served on the defendants within the 120–day period, the actions taken by the plaintiff to notify the insurance carriers complied with the "series of steps" factor of the substantial compliance test. *Id.* at 1151.

Similarly, in *Mayfield*, the court held that both the filed but unserved affidavit of merit and the timely served but unsworn expert report met the "series of steps" test. The court stated that it was "evident that plaintiffs took practically all steps calculated to assist them to meet the requirement that 'plaintiffs in malpractice cases . . . make a threshold showing that their claim is meritorious.' " *Mayfield*, 762 A.2d at 243 (quoting *In re Petition of Hall*, 147 N.J. 379, 688 A.2d 81, 87 (1997)).

Plaintiff's series of steps parallel the steps taken in both *Galik* and *Mayfield.* Plaintiff obtained an initial expert report approximately four months prior to filing her complaint. Then Plaintiff, acknowledging New Jersey's affidavit of merit statute in her letter to the clerk, filed the report with the court immediately after filing her complaint. Within the sixty days required by the statute, Plaintiff served a copy of the initial expert report on Defendants, Defendants' insurance carrier, and the defense counsel. Finally, after Plaintiff's expert received more information concerning Kindig's care, an updated, more complete report was filed with the court.

Analogous to the steps taken by the plaintiff in *Galik*, and just as the court held in *Mayfield*, the actions taken by Plaintiff demonstrate that practically all steps necessary to meet the threshold requirement to show the claim is meritorious were taken. Therefore, Plaintiff has met the second factor of the substantial compliance test.

### 3. General compliance with the purpose of the statute

Corresponding with the "series of steps" factor, Plaintiff complied with the purpose of the statute. Considering the statute's underlying purpose to ferret out meritless claims, the court in *Galik* determined that the series of steps taken by Plaintiff "constituted a substantial good faith effort to comply with the statute and to satisfy its underlying purpose." *Galik*, 771 A.2d at 1151. Similarly, in *Mayfield*, the court held that Plaintiff's compliance with the purpose of the statute had been "amply demonstrated." *Mayfield*, 762 A.2d at 244.

Comparatively, Plaintiff's series of steps taken to obtain, file, and serve an expert report demonstrates a desire to fulfill the threshold requirement, thus complying with the purpose of the statute. Plaintiff has demonstrated that her claim is not meritless, and therefore, has satisfied the third factor of the substantial compliance test.

### 4. A reasonable notice of petitioner's claim

Defendants had reasonable notice of Plaintiff's claim. In *Galik*, the court reasoned that when the defendants' insurance carriers were served with the plaintiff's expert report eight months prior to the filing of the complaint, the "carriers obviously notified the insureds, on whose behalf they engaged in settlement negotiations." *Galik*, 771 A.2d at 1151. Similarly

in *Mayfield,* the court determined that it was evident from the expert documents and the plaintiff's complaint that the defendants had reasonable notice. *Mayfield,* 762 A.2d at 244.

In this case, it is also evident that Defendants had reasonable notice of Plaintiff's claim. Plaintiff's filing of the complaint first notified Defendants. Defendants filed their answer, after the parties agreed to a thirty-day extension to answer. Plaintiff, then served them with the Goldstein report well before the sixty-day time period mandated by the statute. It is clear that Defendants had ample notice of Plaintiff's claim, and, therefore, Plaintiff has met the fourth factor of the substantial compliance test.

### 5. A reasonable explanation why there was not a strict compliance with the statute

Plaintiff's good faith belief and actions taken to comply with the statute provide a reasonable explanation why there was not a strict compliance with the statute. The court in *Galik* accepted the plaintiff's attorney's good faith belief that he was doing more than what the statute required. *Galik,* 771 A.2d at 1151. The court in *Mayfield* concluded:

> [W]hile mere inadvertence of counsel may not in and of itself suffice to meet this part of the test, in our view, taking the remarkable degree of plaintiff's compliance in combination with the imperative to avoid unwarranted dismissals of meritorious claims, we are satisfied that, as to this fifth factor, counsel's diligence in all other respects should be deemed sufficiently reasonable explanation as to enable him and his client to avoid litigation disaster for a wholly inadvertent and non-prejudicial mistake.

*Mayfield,* 762 A.2d at 244.

In this case, although Plaintiff's counsel does not specifically explain why there was not strict compliance with the statute, he has demonstrated diligence in all other respects. In his July 12, 2000 letter to the court clerk accompanying Goldstein's report, counsel wrote, "Under New Jersey Medical Malpractice Law, a Plaintiff must file an Affidavit of Merit or Expert Report indicating that there is a legitimate claim for malpractice against a defendant actor." In acknowledging the affidavit of merit statute by obtaining and filing an expert report, it appears that counsel had a good faith belief that the expert report qualified under the statute. Furthermore, Plaintiff's counsel served the report on Defendants, Defendants' attorney, and Defendants' insurance carrier within three weeks of the filing of Defendants' answer, which was well under the sixty to 120–day time limit for service under the statute. Plaintiff's counsel also obtained a more complete, supplementary expert report when additional information became available. Additionally, it was not until one month after the expiration of the 120–day limit that Defendants filed a motion to dismiss claiming that the expert report was unsatisfactory.

Following the reasoning of *Galik* and *Mayfield,* and considering Plaintiff's counsel's good faith belief he was complying with the statute, in addition to his considerable degree of compliance, it is evident that Plaintiff has met the fifth and final factor of the substantial compliance test.

### C. Substance of Plaintiff's Expert Report and Plaintiff's Failure to Provide Expert's Qualifications

Plaintiff has met all five factors and demonstrated that she substantially complied with the affidavit of merit statute. However, even though she has complied procedurally, issues remain regarding the

substance of Goldstein's report and qualifications.

The court in *Cornblatt* deemed the issue of what information a plaintiff must include in an affidavit of merit as one of statutory construction. *Cornblatt v. Barow,* 153 N.J. 218, 708 A.2d 401, 412 (1998). The statute mandates that the plaintiff shall provide an affidavit stating " 'that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.' " *Id.* (quoting N.J. Stat. Ann. § 2A:53A–27 (West 1995)). *Cornblatt* determined that this language is the only part of the statute detailing what must be specifically included in the expert report/affidavit. *Id.* The statute lists separately the qualifications of the expert, but does not indicate that a plaintiff must include the expert's qualifications in the affidavit. *Id.*

### 1. Substance

■ Goldstein's report contains the adequate substance mandated by the statute. The courts in *Galik* and *Mayfield* applied *Cornblatt's* statutory analysis to the expert reports. In *Galik,* the court held that the initial, unsworn, unfiled expert report was supported by a supplemental, later-filed report and together both reports established that by a reasonable probability a meritorious claim existed against the defendant. *Galik,* 771 A.2d at 1152. The court stated, "[G]iven that there is no legislative interest in barring meritorious claims brought in good faith, the initial report of [the expert], although not a model of clarity, passes substantive muster under the Affidavit of Merit statute." *Id.*

In *Mayfield,* the court held that the timely served but unsworn expert report

qualified procedurally and substantially with the affidavit of merit statute:

> With respect to the opinion letter of [the expert], it is a formal, albeit terse, written report on the letterhead of a medical doctor who thereby put his reputation on the line as assuredly as if he had sworn to the truth of the document ... it conforms in substance though not in literal form to the statutory specifications, being a letter rather than an affidavit. It was timely provided in fact to defense counsel within the initial 60–day, statutory period. It shows the alleged underlying merits of the action to the same extent as would a document whose form literally complied with the statute. It meets the five-part *Cornblatt* test for substantial compliance. Its acceptance as conforming under the statute would not in any way contravene the statutory purpose. In these circumstances it is highly appropriate, and consistent with the doctrine of substantial compliance, to hold that the [expert's] opinion complies with the statute.

*Mayfield,* 335 N.J.Super. 198, 762 A.2d 237, 243–44 (2000).

Goldstein's report is in keeping with the holdings in *Cornblatt, Galik,* and *Mayfield,* and therefore, complies with the statute procedurally and substantively. The initial report includes the required content, stating, "I conclude with a reasonable degree of scientific and pharmacological certainty that treatment given by Lance Gooberman, M.D. and his associates to the late Lester Kindig was below the standard of clinical pharmacological care and led to his death." Similar to *Galik,* Goldstein's initial report was supplemented by a later-filed, more complete report. Comparable to *Mayfield,* Goldstein's report is in letter form, was served within the sixty-day time period, demonstrates the underlying merits of the case, and

meets all five factors of the substantial compliance test. Further, an expert report does not need to list the expert's qualifications. *See Cornblatt*, 708 A.2d at 412. Because the content of Plaintiff's expert report complies with the affidavit of merit statute, the report is substantially and procedurally acceptable under the statute.

## 2. Expert Qualifications

■ Plaintiff has failed to provide evidence of Goldstein's qualifications as required by the statute. The expert does not need to have the same qualifications as Defendants—"that the expert is qualified to supply the required basis for the medical malpractice is sufficient." *Burns v. Belafsky*, 166 N.J. 466, 766 A.2d 1095, 1102 (2001). The statute, however, lists the qualifications for an expert, and Plaintiff must show that Goldstein meets these qualifications. *See Cornblatt*, 708 A.2d at 411. The expert "shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review . . . ." N.J. Stat. Ann. § 2A:53A–27 (West 2000). Even though the expert's qualifications do not need to be included in the report, a description of the qualifications must be presented in conjunction with the affidavit. *Cornblatt*, 708 A.2d at 412.

Plaintiff has failed to demonstrate that her expert meets the qualifications listed in the statute. Although Plaintiff has submitted a signed certification from Dr. Goldstein, which attests to the truthfulness of his report, the certification does not state that he is licensed, that he has been devoted to his specialty for at least five years, or that he has no financial interest in the outcome of the case.

■ In consideration of Plaintiff's substantial compliance with the affidavit of merit statute, however, this Court will permit Plaintiff additional time to demonstrate Goldstein's qualifications. Plaintiff has acknowledged the affidavit of merit statute from the inception of this lawsuit, and she has never attempted to circumvent it. Plaintiff's efforts to comply with the statute readily satisfy all five factors of the substantial compliance test, and the substance of the report exceeds the threshold requirement. Plaintiff also has provided a certification from the expert attesting to the truthfulness of the report and listing some of his qualifications. Considering the purpose of the statute, and the steps taken by Plaintiff to comply, it would be unjust to dismiss Plaintiff's complaint with prejudice based solely on an easily remedied technicality.

Furthermore, the minimal delay caused by Plaintiff's time extension does not prejudice Defendants. Although the affidavit of merit statute permitted Plaintiff to serve Defendants with an affidavit within 120 days following an answer, Plaintiff provided Goldstein's report within thirty days. Even though Defendants had three months prior to the expiration of the 120 days to challenge the validity of Goldstein's report, they waited until the time had expired to file this motion. It appears that Defendants are seeking to prevail on a technicality by waiting until Plaintiff's time to submit a proper expert report had expired. This Court will not permit that result under the circumstances of this case. The time limit imposed by the statute is an attempt to fulfill the statute's purpose of ferreting out meritless claims-it is not intended to be a method for avoiding meritorious lawsuits.

Plaintiff's complaint, however, will be dismissed if she fails to submit the proper evidence of the expert's qualifications.

## V. CONCLUSION

Goldstein's report satisfies the New Jersey affidavit of merit statute because it makes a threshold showing that the claim is meritorious, meets all five factors of the substantial compliance test, and has the proper content. Plaintiff has not, however, supplemented the report with evidence that Goldstein has the statutorily-defined qualifications. As a result, this motion will be continued for twenty days in order to allow Plaintiff time to provide documentation of the expert's qualifications. Defendants may respond within ten days of Plaintiff's submission. If Plaintiff fails to demonstrate Goldstein's qualifications as required by the statute, her complaint will be dismissed for failure to state a cause of action.

An appropriate Order will issue.

## ORDER

For the reasons contained in this Court's opinion issued even date,

IT IS ORDERED this 17th day of July, 2001 that this motion is *CONTINUED;* and

IT IS FURTHER ORDERED that Plaintiff has twenty (20) days from the date of this Order to demonstrate Goldstein's qualifications as required by the affidavit of merit statute. Failure to comply with this order will result in a dismissal of Plaintiff's complaint for failure to state a cause for action. Defendants will have ten (10) days to reply to Plaintiff's submission.